## Denis Bail Bonds, Inc. v. State of Vermont

[622 A.2d 495]

No. 91-613

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed January 8, 1993

*Thomas M. French*, Brattleboro, for Plaintiffs-Appellants.

*John A. Serafino* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Defendant-Appellee.

**Dooley, J.** Plaintiff Denis Bail Bonds, Inc. appeals the decision of the Windsor Superior Court granting defendant State of Vermont's motion for judgment on the pleadings. Plaintiff's lawsuit alleged that the State was liable in tort for the damages caused by the failure of the Vermont Department of Banking and Insurance to inform plaintiff of complaints of wrongdoing by plaintiff's agent. The court held that the claim failed to demonstrate that the State's actions were analogous to any actions for which a private person could be liable, and that the State owed no duty to the plaintiff. We affirm.

Plaintiff is a New Hampshire corporation engaged in the issuance of bail bonds in New Hampshire and Vermont, under contract as general agent for American Bankers Insurance Company (ABIC). In turn, plaintiff was the assignee of a contract that designated Charles M. Detore as its agent for Vermont and part of New Hampshire and authorized him to issue bail bonds underwritten by ABIC. Under these agency contracts, Detore was ultimately liable for any bail forfeitures, financial irregularities or other lost property related to bail bond transactions to which he was a party, and plaintiff was secondarily liable on these obligations.

Beginning in March of 1988, the Vermont Department of Banking and Insurance (Department)[1] began receiving complaints of misconduct concerning Detore. Generally, the com-

---

[1] The Department has since been redesignated the Department of Banking, Insurance, and Securities. 1989, No. 225 (Adj. Sess.), § 25(a).

plaints alleged that Detore improperly converted funds placed with him as collateral in bail bond transactions. The Department did not notify plaintiff of these complaints. In November, 1988, the Commissioner of Banking and Insurance (Commissioner) audited Detore's files but did not obtain a court order authorizing their seizure. Apparently as a result of Detore's access to his files, all meaningful records had been removed by the time the audit was completed. The Commissioner revoked Detore's license and obtained a stipulation from Detore to repay the claims arising from his misconduct; Detore subsequently defaulted on this agreement. Under its contracts with ABIC and Detore, plaintiff was obligated to pay these claims.

In March of 1991, plaintiff filed suit in Windsor Superior Court to recover from the State of Vermont the amounts paid in satisfaction of the claims against Detore.[2] The court granted the State's motion for judgment on the pleadings, ruling that because the State was protected by sovereign immunity, which it had not waived, plaintiff had failed to state a claim upon which relief could be granted. On appeal in this Court, plaintiff renews its argument that the State waived its sovereign immunity, and therefore has a duty, as demonstrated by 8 V.S.A. §§ 3563–3566 and 4726, to investigate serious complaints of wrongdoing perpetrated by insurers or their agents and to notify interested parties of the complaints. This duty, plaintiff claims, has a private analog in the duty of a certified public accountant to disclose the results of an audit to foreseeably interested persons. Plaintiff contends that the State negligently failed to provide notice of the complaints against Detore, resulting in losses that otherwise would have been preventable.

■ Absent due process violations, lawsuits against the state for acts essentially governmental in nature are barred unless

---

[2] Plaintiff contends that, under the superior court's grant of its motion to amend the pleadings, Brian G. Denis and Sharon L. Denis were joined as additional plaintiffs in the action below. The claims of these individuals essentially mirror the claims of the corporate plaintiff. The State contests plaintiff's assertion, arguing that plaintiff waived the right to such amendment and joinder when it failed to comply with the court's instructions to prepare an appropriate consent order. Because we decide that the State is protected from liability on these claims under the doctrine of sovereign immunity, it is unnecessary for us to address this question.

the state waives its sovereign immunity and consents to be sued. See *Williams v. State*, 156 Vt. 42, 55, 589 A.2d 840, 848 (1990). The state has waived its sovereign immunity with respect to certain tort actions by the Vermont Tort Claims Act (VTCA). See 12 V.S.A. §§ 5601–5606. The central provision of the statute is § 5601, which provides that the state

> shall be liable for injury to persons or property or loss of life caused by the negligent or wrongful act or omission of an employee of the state while acting within the scope of employment, under the same circumstances, in the same manner and to the same extent as a private person would be liable . . . .

12 V.S.A. § 5601(a). Even if subject to liability under this provision, the state still may be immune to suit under several exceptions, notably those in subsection (e). This latter provision contains the "discretionary function" exception, which limits the liability of the state for the discretionary acts or omissions of state agencies or employees. See *id.* § 5601(e).

The language of § 5601(a) resembles certain provisions of the Federal Tort Claims Act (FTCA). The FTCA provides that the federal government is liable only "to the same extent as a private individual under like circumstances." 28 U.S.C.A. § 2674 (West 1965 & Supp. 1992). This concept is also included in the jurisdictional provision of the FTCA, which waives sovereign immunity only "under circumstances where the United States, if a private person, would be liable to the claimant." *Id.* § 1346(b).

The Vermont Tort Claims Act, like the FTCA, is merely a procedural remedy and does not create any substantive cause of action against the state. See generally *Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 671 (1977). The waiver of sovereign immunity in the federal statute was designed "to compensate the victims of negligence in the conduct of governmental activities in circumstances like unto those in which a private person would be liable." *Indian Towing Co. v. United States*, 350 U.S. 61, 68 (1955). The waiver is primarily directed at the "ordinary common-law torts." *Dalehite v. United States*, 346 U.S. 15, 28 (1953). By maintaining a link to private causes of action, this approach serves to prevent the

government's waiver of sovereign immunity from encompassing purely "governmental" functions. Its effect, therefore, "is to waive immunity from recognized causes of action and was not to visit the Government with novel and unprecedented liabilities." *Feres v. United States*, 340 U.S. 135, 142 (1950).

■ Under this "private analog" analysis, governmental liability may arise only if "a plaintiff's cause of action [is] 'comparable' to a 'cause of action against a private citizen' . . . and his allegations, taken as true, [will] satisfy the necessary elements of that comparable state cause of action." *Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988) (citations omitted). This formulation of the private analog requirement proceeds directly from the statutory language. Given the similarity in the federal and Vermont tort claims provisions, we consider it the appropriate analytical approach for determining the scope of the Vermont act and the resulting waiver of sovereign immunity.

■ Although the relevant analytical approaches are the same under the Vermont and federal acts, there is one important relevant difference between the VTCA and the FTCA. Under the Vermont act, the discretionary function exception in § 5601(e) protects the state from liability only to the extent that it is not covered under a policy of liability insurance purchased by the Commissioner of General Services. 12 V.S.A. § 5601(f). In contrast, the comparable federal provision provides absolute immunity for discretionary functions. See 28 U.S.C.A. § 2680. This has led some federal courts to merge their analyses of the private analog and discretionary function components of the FTCA. See, e.g., *Wells v. United States*, 851 F.2d 1471, 1474 (D.C. Cir. 1988) (the private liability requirement is not grounds for governmental immunity separate from the discretionary function exception); *FDIC v. Carter*, 701 F. Supp. 730, 735 (C.D. Cal. 1987) (cases analyzing governmental liability in terms of the discretionary function exception and those utilizing a duty analysis "can be viewed as substantially interchangeable"). Other federal decisions, however, have not employed this approach. See, e.g., *Butts Feed Lots, Inc. v. United States*, 690 F.2d 669, 670 (8th Cir. 1982) (because government owed plaintiff no duty, court found it unnecessary to reach the discretionary function exception); *Harmsen v. Smith*, 586 F.2d 156, 158

(9th Cir. 1978) (same). Because of the structure of the VTCA noted above, we must clearly separate the two lines of analysis.

In this case, then, the threshold issue is whether plaintiff's factual allegations, which must be taken as true for purposes of the motion for judgment on the pleadings, satisfy the necessary elements of a cause of action against the State comparable to one that may be maintained against a private person. As plaintiff's suit alleges negligence, the requisite elements of the cause of action are familiar: the existence of a legally cognizable duty owed by the defendant to the plaintiff, breach of that duty, such breach as the proximate cause of plaintiff's injury, and actual damages. *Langle v. Kurkul*, 146 Vt. 513, 517, 510 A.2d 1301, 1304 (1986) (citing W. Prosser & W. Keeton, The Law of Torts § 30, at 164–65 (5th ed. 1984)). Resolution of this case requires us to examine only the first of these elements.

It is well established that liability for negligence must be predicated upon a duty of care, *Poplaski v. Lamphere*, 152 Vt. 251, 256, 565 A.2d 1326, 1329 (1989), the existence of which is primarily a question of law. *Langle*, 146 Vt. at 519, 510 A.2d at 1305. "Duty" may be viewed as "an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection." W. Prosser & W. Keeton, The Law of Torts § 53, at 358 (5th ed. 1984). The Minnesota Supreme Court has enunciated several factors that we consider useful indicia in determining whether a governmental body has undertaken a duty of care toward certain persons: (1) whether an ordinance or statute sets forth mandatory acts clearly for the protection of a particular class of persons, rather than the public as a whole; (2) whether the government has actual knowledge of a condition dangerous to those persons; (3) whether there has been reliance by those persons on the government's representations and conduct; and (4) whether failure by the government to use due care would increase the risk of harm beyond its present potential. *Cracraft v. City of St. Louis Park*, 279 N.W.2d 801, 806–07 (Minn. 1979). The first of these criteria goes directly to the heart of plaintiff's argument.

Although plaintiff has likened the Commissioner to a CPA, it has relied on various provisions of Vermont's insurance statutes to support an inference that the Commissioner has a duty to

investigate complaints of wrongdoing by an insurer's agent and, as a derivative duty, to disclose any evidence of misconduct to all interested parties. We find no support for plaintiff's reading of these statutory provisions and the inferences drawn from them.

At the outset, although plaintiff has not cited it, we note there is a specific statute setting forth the Commissioner's duty to notify others of actions taken with respect to an insurance agent. That section provides a duty to notify "all appointing insurers," 8 V.S.A. § 4806(a), "the central office of the national association of insurance commissioners and the insurance commissioner [of certain other states]." *Id.* § 4806(b). Assuming plaintiff falls within the class of persons subject to notification, the duty arises only with respect to "suspension, revocation or termination" of license. *Id.* § 4806(a), (b). Plaintiff received notice of the revocation of Detore's license. The complaint relates to the prerevocation period, during which there is no statutory duty of notification.

Plaintiff relies on general statutes relating to the Commissioner's duty to supervise insurance companies. Although plaintiff does not say so specifically, we assume its theory is that the Commissioner had certain duties with respect to ABIC, the exercise of which would have turned up Detore's wrongdoing. The main provision on which plaintiff relies, 8 V.S.A. § 3564, authorizes examination of out-of-state insurers "[w]hen the commissioner determines it to be prudent."[3] Echoing one of the basic purposes of Title 8, however, the section states that the Commissioner's examinations are "for the protection of policyholders in this state." *Id.*; see also 8 V.S.A. § 1 (one of the purposes of Title 8 is to protect the public against unfair insurance practices). We fail to see how the section creates a duty with respect to plaintiff.

We have similar problems with 8 V.S.A. § 4726(a), a part of the Insurance Trade Practices Act which authorizes the Com-

---

[3] Plaintiff also relies on 8 V.S.A. § 3563, which authorizes examination of domestic insurers. Plaintiff has not alleged that ABIC is a domestic insurer, and it apparently admitted in the trial court that ABIC is a foreign insurer. Thus, we have given no consideration to § 3563. Plaintiff also cites §§ 3565 and 3566, but these sections merely implement the examination authorizations and are not relevant to the question before us.

missioner to investigate any person in the insurance business "to determine whether that person has been or is engaged in any unfair method of competition or in any unfair or deceptive act or practice." The substantive prohibitions of the chapter are set out in 8 V.S.A. § 4724 and relate to treatment of competitors or consumers. There is no basis for inferring that the statutory scheme was intended to create a duty running from the state to any class of insurers that hire untrustworthy agents. Any duty the state may have had to supervise Detore's accounts was for the protection of the general public, not plaintiff. [4] See *Cronin v. State*, 148 Vt. 252, 255, 531 A.2d 929, 931 (1987) (citing *Shelton v. Industrial Commission*, 367 N.E.2d 51, 54 (Ohio Ct. App. 1976)) (statutes mandating the inspection and enforcement of safety standards are for the benefit of the general public and do not create a duty toward any particular person); *Wilder v. Aetna Life & Casualty Ins. Co.*, 140 Vt. 16, 19, 433 A.2d 309, 310 (1981) (8 V.S.A. § 4726 does not create a private right of action).

Nor can we find a duty flowing to plaintiff from the overall regulatory scheme. There is no indication that any part of Title 8 was enacted for the protection of principals and sureties of insurance agents. Indeed, it would be a great expansion of the concept of duty to allow the principal to pass the obligation to supervise an insurance agent on to the state, and such a duty would dilute the Commissioner's primary obligation to protect the public.

The remaining factors noted above similarly fail to provide a basis for recognizing a duty of care on the part of the state. First, plaintiff does not allege that the state had actual knowledge of plaintiff's contractual arrangements with Detore and ABIC, and we will not infer such knowledge from a silent record. Second, plaintiff has not shown that it relied on the state to supervise Detore or assume the role of an accountant with respect to his business.

Although there is sparse Vermont precedent, many cases decided under the Federal Tort Claims Act support the conclusion we reach here. In *Harmsen v. Smith*, 586 F.2d at 158, the court

---

[4] We reach a similar conclusion with respect to the examination authorization of 8 V.S.A. § 4700, which implements a specific chapter intended for the protection of the public.

held that the government owed no duty of care to a bank or its shareholders for negligent inspection of the bank or failing to discover illegal banking practices. After examining statutes similar to the Vermont regulatory statutes discussed above, the court ruled that federal statutory provisions requiring the Comptroller of the Currency to conduct bank examinations did not impose any duty on the Comptroller to protect shareholders. *Id.* at 157. The court's statement that "[b]ank examinations are not beacons to light the path of erring directors or gulled stockholders," *id.* at 158, seems an appropriate admonition to insurers who have hired untrustworthy agents. See also *First State Bank of Hudson County v. United States*, 599 F.2d 558, 562 (3d Cir. 1979) (no duty in FDIC to warn bank of criminal misapplication of bank funds by bank's president); *FSLIC v. Smith*, 721 F. Supp. 1039, 1048 (E.D. Ark. 1989) (purpose of the regulatory authority of the FSLIC not intended to "establish a deep pocket to reimburse those who would not have lost money had the agency taken greater steps to protect them"); *FDIC v. Renda*, 692 F. Supp. 128, 135 (D. Kan. 1988) ("[t]he duty to discover fraud rests squarely on the shoulders of an institution's officers and directors").

■ Because we hold that the State owed no duty to plaintiff, barring liability under 12 V.S.A. § 5601(a), it is unnecessary to examine whether any of the exceptions to the waiver of sovereign immunity listed in § 5601(e) are applicable.

■ Plantiff also argues that the State waived sovereign immunity by purchasing liability insurance coverage. At the time of the events at issue in this case, an "insurance waiver" of the State's sovereign immunity was provided by 29 V.S.A. § 1403, which stated, prior to the 1989 amendment:

Notwithstanding the provisions of section 5602 of Title 12, or any other statute, when *the state* . . . purchases a policy of liability insurance . . . and when a municipal corporation purchases a policy of liability insurance . . . and when a county purchases a policy of liability insurance . . . [each] waives its sovereign immunity from liability to the extent of the coverage of the policy and consents to be sued.

(Emphasis added.) The Legislature, however, has amended this provision so that it now provides for a waiver of sovereign im-

munity only for municipal corporations and counties. 1989, No. 114, § 7. Thus, the state has withdrawn its general insurance waiver of sovereign immunity. Such a withdrawal is effective even if instituted after the occurrence of events giving rise to a later lawsuit. See *Lynch v. United States,* 292 U.S. 571, 581 (1934). The state is no longer among the government entities generally subject to tort liability upon the purchase of insurance.

As plaintiff points out, the amendment to 29 V.S.A. § 1403 was accompanied by the adoption of a new insurance waiver provision in 12 V.S.A. § 5601(f). The new waiver provision is narrower, however, and governs only when one of the exclusions of § 5601(e) applies to defeat a tort claim. It does not apply where plaintiff's suit does not fit within the basic coverage of the tort claims act as set forth in § 5601(a). Section 5601(f) does not apply to create a waiver of sovereign immunity in this case.

Because the doctrine of sovereign immunity insulates the State from tort liability in this case, the ruling of the superior court that plaintiff has failed to state a claim upon which relief can be granted was correct. Its decision to grant judgment on the pleadings in favor of the State must be upheld.

*Affirmed.*