## Deborah Noble v. Office of Child Support

[721 A.2d 121]

No. 97-322

Present: **Morse, J., and Katz, Supr. J., Cashman, D.J., Allen, C.J. (Ret.) and Gibson, J. (Ret.), Specially Assigned**

Opinion Filed October 2, 1998

*Marc D. Eagle*, East Montpelier, for Plaintiffs-Appellees.

*William H. Sorrell*, Attorney General, Montpelier, and *Donelle Smith Staley* and *Christopher L. White*, Assistant Attorneys General, Waterbury, for Defendant-Appellant.

**Morse, J.** Plaintiff Deborah Noble filed this action against the State of Vermont Office of Child Support Services, alleging that OCS had negligently failed to comply with its statutory duty to assist her and her children in enforcing a child support order. OCS moved for summary judgment on the basis of sovereign immunity. The superior court denied the motion, and subsequently denied OCS's request for permission to file an interlocutory appeal under V.R.A.P. 5(b). OCS then filed a motion for permission to appeal with this Court. We granted the motion, and now reverse.

In April 1986, Noble obtained a judgment of divorce against her former husband, Virgil McCarty, Jr. The divorce order required McCarty to pay $100 per week for the support of his two minor children. McCarty consistently failed to make the required payments. In 1992, Noble filed a lien with the town clerk on property partially owned by McCarty for the arrearage amount. She believed that his interest in the land was worth about $20,000. In January 1993, Noble began receiving ANFC (Aid to Needy Families with Children) benefits. As a condition of receiving such benefits, she was required to assign her rights to child support to the Department of Social Welfare. See 33 V.S.A. § 3902; 42 U.S.C. § 602(a). The agreement provided that any unpaid support collected by DSW would first be used to reimburse DSW before any excess was paid to her.

In November 1993, OCS petitioned the family court to enforce the child support order. Service upon McCarty proved to be difficult, however, and the action stalled. In the Fall of 1994, Noble learned that a motion had been made to partition the property on which she had filed the arrearage lien. She notified DSW of the date of the hearing, but no one from DSW attended. In early 1995, McCarty was finally served in the enforcement action, and in February Noble received a judgment for arrears in the amount of approximately $28,000.

Meanwhile, dissatisfied with OCS's handling of the case, Noble filed a grievance in November 1994. See 33 V.S.A. § 4108(a) (OCS shall "establish and implement a grievance procedure to contest decisions of the office of child support"). Following an administrative review, a report was issued concluding that OCS had "lost control of the time element of this case." Unsatisfied with this response, Noble requested a fair hearing before the Human Services Board under 3 V.S.A. § 3091. Following a hearing, the Board issued a report finding that OCS had inexplicably allowed Noble's case to languish, and that its "lack of interest in enforcing the lien at hearing show[ed] a remark-

able callousness not only with regard to collecting back support owed to the petitioner but also in collecting back support owed to the Department." The Board concluded that OCS had failed to "carry out the letter or the spirit of the regulations with regard to enforcing [Noble's] child support," and ordered OCS to immediately file a lien on property owned by McCarty to enforce the judgment, to actively partake in any action which may be brought to force a sale of that property, and to take additional timely enforcement actions should McCarty fail to follow the enforcement order.

Following the Board's order, Noble filed this action against OCS, alleging that it owed her and her children a duty to diligently pursue their entitlement to child support and that it had negligently failed to do so. The State moved for summary judgment on the basis of sovereign immunity. The court denied the motion in a brief entry order, ruling that material facts were in dispute as to Noble's "reliance on OCS representations and as to whether OCS increased [the] likelihood of non-collection by delay in filing actions or liens," and further concluding that a "[p]rivate analog exists in the form of collection agencies." This appeal followed.

■ Sovereign immunity protects the state from suit unless immunity is expressly waived by statute. *LaShay v. Department of Soc. & Rehabilitation Servs.*, 160 Vt. 60, 67, 625 A.2d 224, 228 (1993). The State of Vermont has waived its immunity to certain suits under 12 V.S.A. § 5601(a), which in pertinent part provides:

> The state of Vermont shall be liable for injury to persons . . . caused by the negligent or wrongful act or omission of an employee of the state while acting within the scope of employment, under the same circumstances, in the same manner and to the same extent as a private person would be liable to the claimant. . . .

■ Thus, the general rule is that "[t]he government remains immune . . . for governmental functions for which no private analog exists." *LaShay*, 160 Vt. at 68, 625 A.2d at 229. As we explained in *Denis Bail Bonds, Inc. v. State*, 159 Vt. 481, 485-86, 622 A.2d 495, 498 (1993), "this approach serves to prevent the government's waiver of sovereign immunity from encompassing purely 'governmental' functions." The statutory goal is to "'waive immunity from recognized causes of action and . . . not to visit Government with novel and

unprecedented liabilities.'" *Id.* at 486, 622 A.2d at 498 (quoting *Feres v. United States*, 340 U.S. 135, 142 (1950)); see also *LaFond v. Department of Soc. & Rehabilitation Servs.*, 167 Vt. 407, 409, 708 A.2d 919, 920 (1998) (holding that licensing and inspection of day-care facilities are "inherently *governmental* functions which find no private analog or duty of care in our common law").

The court here concluded that Noble's suit against OCS found a private analog "in the form of collection agencies," and therefore that she had met the threshold requirement of a claim against the State. See *Sabia v. State*, 164 Vt. 293, 298, 669 A.2d 1187, 1191 (1995) ("threshold issue" is whether plaintiff's action is "'comparable to one that may be maintained against a private person'") (quoting *Denis Bail Bonds*, 159 Vt. at 487, 622 A.2d at 498). We find the court's reasoning to be unpersuasive. A collection agency is a person or firm engaged primarily in the business of collecting debts owed to others. Its sole contractual duty is to utilize its best efforts to collect the debt. See, e.g., *People v. Datacom Sys. Corp.*, 585 N.E.2d 51, 60 (Ill. 1991) (collection agency is business which, for compensation, contingent or otherwise, offers services to collect debts of others). As explained below, the interests and duties of OCS are not analogous to those of a collection agency except in the most superficial sense.

OCS was established to administer the Child Support Enforcement Act (Title IV-D of the federal Social Security Act), 42 U.S.C. §§ 651-669. To qualify for federal ANFC funds, the state must operate a child support enforcement program that conforms with the numerous requirements set forth in Title IV-D. Establishing paternity, locating absent parents, and helping families obtain and enforce support payments are among the many services that OCS must provide free of charge to ANFC recipients. See *id.* §§ 651, 654; 33 V.S.A. § 4102. As a condition of eligibility for assistance, ANFC recipients must assign their child support rights to the state and fully cooperate with the state's effort to establish paternity and obtain support payments. See 42 U.S.C. § 602(a); 33 V.S.A. § 3902; *Blessing v. Freestone*, 520 U.S. 329, 334, 117 S. Ct. 1353, 1356 (1997). The state generally keeps a portion of the support payments that it collects on behalf of aid recipients to offset the costs of welfare benefits. See 42 U.S.C. § 657; 33 V.S.A. § 3902.

In bringing support actions on behalf of ANFC families, OCS is statutorily required to "be guided by the best interests of the child for

whose benefit the action is taken." 33 V.S.A. § 4106(f). Ordinarily the amount of support to which the child would be entitled under the support guidelines is presumed to be in the child's best interest, "but other relevant information which is readily available, including information provided by the parents shall be considered together with the factors set out in section 659 of Title 15." *Id.* § 4106(f)(1). Further, OCS may decline to undertake a support action "[i]f, after reasonable inquiry into the circumstances of the family, it is determined by the office . . . that an action would not be in the best interests of the affected child." *Id.* § 4106(f)(2).

It is thus apparent that the relationship between OCS and the ANFC recipient family, and the rights and duties flowing therefrom, have no parallel in the private sector. The state's statutory mandate, to be sure, is to enforce support obligations owing to ANFC recipients, but any analogy to a collection agency ends there. Unlike a collection agency, OCS's principal duty is not merely to collect debts on behalf of a creditor. When an assignment of a support obligation is in effect, OCS is broadly empowered to take whatever enforcement action is in the *best interests of the child*. See 33 V.S.A. § 4106(f). The office is guided in this regard by the same factors that inform a family court's decision to award child support, including the financial resources of the parents, the physical and emotional needs of the children, the educational needs of the parents and children, and any other factor that it finds relevant. See *id.* § 4106(f)(2); 15 V.S.A. § 659. Indeed, OCS may *decline* altogether to enforce a support obligation if, in its discretion, it determines that such an action would not be in the best interests of the affected child. See 33 V.S.A. § 4106(f)(2).

■ Thus, OCS enforcement actions on behalf of ANFC recipients are broadly discretionary, and serve a variety of state policies and interests wholly apart from the collection of debts. Its duties, in sum, are uniquely *governmental* and find no private analog in our common law. See *LaFond*, 167 Vt. at 409, 708 A.2d at 920 (holding that absence of private analog to state's licensing and regulation of day-care facilities barred negligence action). Accordingly, the action against OCS is barred as a matter of law by the doctrine of sovereign immunity.

*Reversed.*