## Katherine Powers v. Office of Child Support

[795 A.2d 1259]

No. 00-335

Present: **Amestoy, C.J., Morse, Johnson and Skoglund, JJ., and Allen, C.J. (Ret.), Specially Assigned**

Opinion Filed April 5, 2002

*Charlotte Dennett*, Burlington, for Plaintiff-Appellant.

*William H. Sorrell*, Attorney General, Montpelier, and *Donelle Smith Staley*, Assistant Attorney General, Waterbury, for Defendants-Appellees.

**Skoglund, J.** Plaintiff Katherine Powers appeals from a superior court judgment dismissing her claims against defendants State of Vermont, Office of Child Support ("OCS"), and eleven of its current and former employees for failure to state a claim upon which relief can be granted under V.R.C.P. 12(b)(6).[1]

Specifically, Powers claims that the Vermont OCS failed to adequately represent her in seeking enforcement of child support

---

[1] The Office of Child Support ("OCS") is a subdivision of the Vermont Agency of Human Services and is responsible for administering the federal Title IV-D child support enforcement program in Vermont. Individual named defendants are: Jeffrey Cohen, the director of OCS, and OCS employees Scott Barrett, Donna Blight, Ellie Hubbell, Sparrow Calkins, Lynn Relyea, Tom Rotella, Patricia Van Schaick, Marjorie Shepard, Carol Butterfield, Robert Patton and Barbara Lyons.

orders against her ex-husband. She argues that the court erred in determining that her claims against the State and OCS were barred by the doctrine of sovereign immunity and that her claims against the individual defendants were barred by 12 V.S.A. § 5602(a). She claims, too, that the court erred in failing to consider her breach of contract claim. We affirm.

When reviewing a motion to dismiss we accept as true all well-pleaded factual allegations in the complaint. *Richards v. Town of Norwich*, 169 Vt. 44, 48-49, 726 A.2d 81, 85 (1999). The complex factual background of this case spans nearly twenty years. The following facts as alleged by Powers are taken as true.[2] Powers, a Vermont resident, filed for a divorce from her husband, James Horner, in 1978. In the final divorce decree, she retained custody of their two children, Lauren, born in 1968, and David, born in 1973. Horner moved to New York after the divorce. The New York court ordered Horner to pay $250 a month in child support. Powers filed a URESA[3] petition with the State of New York in 1978 to enforce the payment of child support.

Powers received public assistance from the State of Vermont from 1978 through 1981. Pursuant to the conditions of eligibility for this program, Powers assigned her right to receive child support payments to the Department of Social Welfare ("DSW"). OCS sporadically pursued Horner for payment on arrearages that accrued during the assignment of rights, monies that would then go to reimburse the state, but otherwise virtually ignored the Vermont family court order.

From 1978 through 1991, Powers repeatedly requested assistance from OCS in enforcing the child support orders. She claims that OCS failed to inform her of hearings that took place in the New York family court and of the fact that arrearages were twice reduced by IRS tax offset payments, once in 1988, and once in 1990. In October 1989, OCS sent Powers a check for $50, the first child support payment she had received since the divorce in 1978. She received $50 monthly payments from January 1990 through August 1990. In 1991, Powers learned that OCS had been withholding $3,125 owed to her. She was finally paid

---

[2] In her complaint Powers makes factual allegations involving both OCS and the Department of Social Welfare (DSW). The distinction is not critical to our decision in the case.

[3] The Uniform Reciprocal Enforcement of Support Act ("URESA") is a model act which had been adopted in many states. It provided for the enforcement of child support orders where the dependent children reside in a state that cannot obtain personal jurisdiction over the parent who owes support. See generally, Unif. Reciprocal Enforcement of Support Act, 9C U.L.A. 273-87 (1958).

that money in September 1991. In 1992, OCS began to seek enforcement of the 1979 Vermont family court order by filing a petition for enforcement in the New York court. However, OCS did not follow up on that petition until mid-November when it learned from the New York court that the petition had been misplaced. Powers was not informed that the petition had been misplaced.

In response to Powers' requests for assistance, OCS sent her a package to formally apply for services in 1992. She applied for tracking services, assets location services, enforcement services, and trial services. Following a meeting with OCS employees Van Schaick and Calkins in November 1992, Powers expected OCS would act on her case. She did not agree to get her own lawyer. She claims that an explanation provided by Van Schaick was "misleading" concerning the URESA petition. Her complaint also alleges that, in 1993, OCS put the wrong social security number on their enforcement forms, thereby impeding enforcement remedies.

In 1993, OCS filed a foreign support order with the State of New York. Following hearings held in New York for the purpose of enforcing child support arrears, Horner was ordered to pay $10,000 up front and $500 per month towards arrearages, which at that time totaled over $120,000. According to her complaint, Powers was not informed of this decision and she was denied access to the transcripts and pleadings connected with this enforcement action. Furthermore, in 1994, she was denied a referral to the United States Attorney's Office for criminal prosecution of Horner, a referral which is usually given when OCS's enforcement efforts have failed.

On December 12, 1995, Powers was sent a copy of a November 30, 1995 order from the New York judge holding that Horner would not be incarcerated for his years of willful nonpayment. She was not informed of her right to appeal or be heard. By the time she learned that OCS would not appeal the decision, the appeal period had passed.

OCS consistently misstated the amount of arrears owed to Powers, in part because the computer system could not handle amounts over $100,000. In addition, from 1994 to 1997, OCS, through defendants Relyea, Barrett and Patton, repeatedly refused Powers access to her records.

Powers hired her own attorney in 1997.

### I. Procedural History

Powers initially filed her action in the Chittenden Superior Court, claiming that OCS and the individual defendants violated her rights

under federal and state law. Defendants removed the case to the Federal District Court for the District of Vermont based on Powers' claim that the defendants' acts and omissions violated her rights under federal law in violation of 42 U.S.C. § 1983. In federal court defendants moved to dismiss all claims, alleging that there was no private right of action under Title IV-D, and that the State was shielded from suit by the Eleventh Amendment. The District Court, Neidermeier, J., dismissed Powers' federal claims, holding that the defendants were shielded from suit by the doctrine of qualified immunity because the right alleged by Powers, stemming from an individual cause of action for noncompliance with Title IV-D regulations, was not clearly established at the time the alleged violations took place. The District Court returned Powers' state law claims of breach of duty of effective representation, breach of contract, tortious interference with Powers' efforts to mitigate damages, and fraud to the superior court. Defendants then filed in the superior court a motion to dismiss for failure to state a claim, arguing that the action against the State was barred by the doctrine of sovereign immunity, and the action against the employees was barred by 12 V.S.A. § 5602(a) because Powers failed to state a claim for gross negligence or willful misconduct. In the alternative, defendants argued that the named employees were entitled to qualified immunity. The superior court, relying on *Noble v. Office of Child Support*, 168 Vt. 349, 721 A.2d 121 (1998), held that the duties of the OCS are discretionary and without a private analog in statutory or common law and thus dismissed the remaining claims. This appeal followed.

## II. Statutory Background

In 1974, Congress added Title IV, Part D to the Social Security Act (the "Act"). See 42 U.S.C. §§ 651-669. The IV-D amendment established a Child Support Enforcement Program for, among other things, "the purpose of enforcing the support obligations owed by noncustodial parents to their children." 42 U.S.C. § 651. The child support enforcement services contemplated by the program include creating a system for establishing paternity, locating absent parents, and helping families obtain support orders. The Act requires that each state develop and implement a plan, subject to federal approval, for delivery of child support program services in order to qualify for federal funds in providing those services. 42 U.S.C. § 654. OCS is the designated IV-D agency for the purpose of Title IV-D. See 33 V.S.A. § 4101. A state must provide these services free of charge to AFDC

(Aid to Families with Dependent Children) recipients and, when requested, for a nominal fee to children and custodial parents who are not receiving AFDC payments. 42 U.S.C. §§ 651, 654(4); see *Blessing v. Freestone*, 520 U.S. 329, 334 (1997); *Carelli v. Howser*, 923 F.2d 1208, 1210 (6th Cir. 1991) ("States are required to provide child support enforcement services to families that receive AFDC benefits as well as families that do not.") (internal quotation marks and citation omitted).

In enacting Title IV-D Congress recognized that states have a pecuniary interest in child-support enforcement whether or not the custodial parent is an ANFC recipient. One stated purpose of Title IV-D was to help families avoid becoming dependent on the state through lack of support from an absent parent. See S. Rep. No. 93-1356, at 13-14, 25 (1974), reprinted in 1974 U.S.C.C.A.N. 8133, 8145-46, 8158. By extending child support enforcement services to those families not receiving public assistance, Congress intended to assure that families have access to child support services before they are forced to apply for welfare. S. Rep. No. 96-336, at 77-78 (1980), reprinted in 1980 U.S.C.C.A.N. 1448, 1526-27.

## III. Discussion

■Powers contends that her complaint pleaded the elements required to sustain a claim of negligence against the State and the individual defendants and, thus, the court erred in dismissing her case under Rule 12(b)(6). A motion to dismiss for failure to state a claim upon which relief can be granted should not be granted unless it is beyond doubt that there exist no facts or circumstances that would entitle Powers to relief. See *Richards*, 169 Vt. at 48, 726 A.2d at 85; *Amiot v. Ames*, 166 Vt. 288, 291, 693 A.2d 675, 677 (1997). The purpose of a motion to dismiss is to test the law of the claim, not the facts which support it. *Levinsky v. Diamond*, 140 Vt. 595, 600, 442 A.2d 1277, 1280 (1982). As noted above, on review this Court assumes all factual allegations pleaded in the complaint are true, and we disregard all of defendants' contrary assertions. See *Ass'n of Haystack Prop. Owners v. Sprague*, 145 Vt. 443, 444, 494 A.2d 122, 123 (1985).

■We first consider whether the State has waived its sovereign immunity and consents to suit in this negligence action. "Sovereign immunity protects the state from suit unless immunity is expressly waived by statute." *McMurphy v. State*, 171 Vt. 9, 11, 757 A.2d 1043, 1045 (2000) (internal quotation marks and citation omitted). The State

of Vermont has waived its immunity to certain suits under 12 V.S.A. § 5601(a). The statute reads in pertinent part:

> The state of Vermont shall be liable for injury to persons .... caused by the negligent or wrongful act or omission of an employee of the state while acting within the scope of employment, under the same circumstances, in the same manner and to the same extent as a private person would be liable to the claimant ....

12 V.S.A. § 5601(a). As our caselaw makes clear, "[t]he government remains immune .... for governmental functions for which no private analog exists." *LaShay v. Dep't of Soc. & Rehabilitation Servs.*, 160 Vt. 60, 68, 625 A.2d 224, 229 (1993). Under the "private analog" analysis adopted by this Court, the State waives its immunity only to the extent a plaintiff's cause of action is comparable to a recognized cause of action against a private person. *Denis Bail Bonds, Inc. v. State*, 159 Vt. 481, 486, 622 A.2d 495, 498 (1993). The test is then whether the factual allegations "satisfy the necessary elements of a cause of action against the State comparable to one that may be maintained against a private person." *Id.* at 487, 622 A.2d at 498. Under this analysis, the court properly dismissed the action against the State, OCS, and the individual named employees.

Powers' claim against OCS is one of negligence, which is predicated upon OCS's breach of a statutory duty of care. Our decision in *Denis* requires that we determine whether such a duty exists. As noted above, she claims that OCS failed to adequately represent her interests in seeking enforcement of child support orders against her ex-husband. We agree with the trial court that our decision in *Noble* controls this issue, and, therefore, this case. In *Noble*, plaintiff brought an action against OCS, alleging that it had negligently failed to comply with its statutory duty to assist her and her children in enforcing a child support order. The lower court denied the State's motion for summary judgment on the basis of sovereign immunity, finding a private analog in the nature of a collection agency for the governmental function involved. On appeal we reversed, holding that OCS enforcement actions were "broadly discretionary" and served a variety of state policies and interests wholly apart from the collection of debts. We found OCS's duties to be "uniquely governmental" with no private analog in our common law and, therefore, the action against OCS was barred as a matter of law by the doctrine of sovereign immunity. *Noble*, 168 Vt. at 353, 721 A.2d at 124.

Applying the same reasoning, the same result attends here, notwithstanding the fact that this case differs from *Noble* in one respect. In *Noble*, the plaintiff was a recipient of public assistance (ANFC) who assigned her family's right to child support to DSW as a condition of receiving government benefits. Cf. 42 U.S.C. § 602(a)(26) (amended 1996); 33 V.S.A. § 3902. Here, Powers only received state assistance for a brief period between 1978 and 1981, during which time, pursuant to the conditions of eligibility, she assigned her right to receive child support payments to DSW. From 1981 through 1991, however, Powers made informal requests for assistance from OCS and then, in 1992, she formally applied for enforcement and legal services. Because she was not receiving public assistance, she did not assign her rights to receive child support payments to OCS.[4] Powers argues that because she was not on public assistance, her case differs from the situation presented in *Noble*. She argues that OCS functioned more as her private advocate or collection agency, with all the attendant legal obligations, rather than as a governmental body and that, therefore, the reasoning of *Noble* and the doctrine of sovereign immunity does not apply. As we did in *Noble*, here, too, we disagree.

Vermont's statutory scheme was not intended to benefit individual children and custodial parents, but was intended to benefit Vermont society as a whole. Vermont law does not create a specific duty owed by OCS to any particular groups of persons. As we noted in *Noble*, a collection agency is engaged primarily in the business of collecting debts owed to others. "Its sole contractual duty is to utilize its best efforts to collect the debt." *Noble*, 168 Vt. at 352, 721 A.2d at 123. In contrast, in bringing support actions on behalf of families, OCS is required by statute to "be guided by the best interests of the child for whose benefit the action is taken." 33 V.S.A. § 4106(f). Further, the

---

[4] Though not assigning her rights to support payments to DSW, she did enter into an agreement, memorialized by an Application for Child Support Services and a "Disclosure Statement" that reads in pertinent part:

> I recognize that the representative from the Office of Child Support acts at all times on behalf of the Office of Child Support to enforce child support laws and that he or she does not act in the interests of any particular person or party.... This means that the Office of Child Support does not act as my personal advocate or representative in any legal proceedings before the Family Court.

The Disclosure Statement also included the following provision: "I understand the Office of Child Support's role and my continuing right to get my own attorney in connection with this matter."

Legislature has declared that "[t]he paramount interest of the state of Vermont is the welfare of its children. . . . The office of child support in carrying out its responsibility shall be guided by the best interests of the child, but not the economic interests exclusively in an action for child support." 33 V.S.A. § 4101(b). The purpose of OCS does not change depending upon whether or not the petitioner is receiving public assistance or whether the petitioner has assigned his or her rights to the agency. In neither case does the service provided by OCS flow to an individual, but instead it flows to the welfare of the state, its children, and its fisc. Because the duties of OCS are uniquely governmental with no private analog in our common law, Powers' suit is barred against the State and its agency by sovereign immunity.

Powers also argues that the court erred in dismissing her complaint against the individual named OCS employee defendants. She concedes that the individually named defendants were acting within the scope of their employment at all relevant times, but argues that their alleged wrongful actions were grossly negligent and may have been malicious and willful.

■ The Tort Claims Act is an exclusive right of action, 12 V.S.A. § 5602, and claims based on the act or omission of an employee of the state acting within the scope of employment lie against the state of Vermont, not against the employee. There is one exception: when the claim is of gross negligence or willful misconduct, an action may be brought against an employee, even if the act or omission giving rise to the claim was within the scope of employment. See 12 V.S.A. § 5602(b).

■ The existence of a duty is primarily a question of law. *Rubin v. Town of Poultney,* 168 Vt. 624, 625, 721 A.2d 504, 506 (1998) (mem.). Because we hold that Vermont law creates no specific duty owed by OCS to any particular person or group of persons, Powers' allegations against the OCS employees named cannot satisfy the first necessary element of a cause of action in negligence. The requisite elements of the cause of action are familiar: the existence of a legally cognizable duty owed by the defendant to the plaintiff, breach of that duty, such breach being the proximate cause of plaintiff's injury, and actual damages. *Langle v. Kurkul,* 146 Vt. 513, 517, 510 A.2d 1301, 1304 (1986). Here, there is no duty owed to Powers as an individual by the employees of OCS for their work on behalf of the agency. As we noted in *Sorge v. State,* 171 Vt. 171, 762 A.2d 816 (2000), in a negligence case, the issues of immunity defenses do not become germane until it has been established that a defendant owes a plaintiff a duty of care that has

been breached. *Id.* at 174, 762 A.2d at 818. Therefore, Powers could not prove an action for simple or gross negligence against the employees.

Further, we note that the complaint does not make any claims against any individual defendant that could be shown to constitute gross negligence. Indeed, the complaint does not allege that any employee was negligent, only that the actions of OCS constitute a "long-standing pattern of gross negligence and indifference to the plaintiff."

To sustain a claim for gross negligence, a plaintiff must present facts that demonstrate that an individual defendant heedlessly and palpably violated a legal duty owed to plaintiff. *Mellin v. Flood Brook Union Sch. Dist.*, 173 Vt. 202, 219-20, 790 A.2d 408, 423 (2001) (citing *Shaw v. Moore*, 104 Vt. 529, 531, 162 A. 373, 374 (1932)). And while it is generally a question for the jury as to whether an individual was grossly negligent, when reasonable persons cannot differ on the question, a court can decide the issue as a matter of law. *Hardingham v. United Counseling Serv.*, 164 Vt. 478, 481, 672 A.2d 480, 482 (1995). What is alleged in Powers' complaint is simple incompetence, inaccurate record keeping, and clerical errors. Such claims do not rise to the level of gross negligence. We agree with the court that plaintiff's allegations fail to make out a case of gross negligence.

Powers also claims that she relied on OCS to provide child support enforcement services in return for consideration and that OCS breached its agreement and caused her damage.[5] She captioned this claim as one of breach of contract. She suggests that the trial court neglected to rule on this claim. However, when determining the nature of a claim, the court should look to the substance of the complaint rather than its precise terminology. *Stevenson v. Capital Fire Mut. Aid Sys., Inc.*, 163 Vt. 623, 625, 661 A.2d 86, 89 (1995) (mem.) (citing *Kinney v. Goodyear Tire & Rubber Co.*, 134 Vt. 571, 576, 367 A.2d 677, 680 (1976)). Powers' claims are all variations on the theme of inadequate provision of child support services. The immunities discussed above encompass Powers' additional claims. As there was no contract for services, we find no error in the trial court's omission.

Finally, Powers alleges that OCS caused her harm by failing to provide her access to her files, thus preventing her from taking reasonable actions to mitigate damages. This claim is made against the agency

---

[5] Though the record is unclear on this point, it appears that Powers did not pay any fee, however nominal, when she requested services from OCS.

and not any named individual. Thus, it is defeated by sovereign immunity.

*Affirmed.*