VERMONT SUPERIOR COURT
Environmental Division
32 Cherry St, 2nd Floor, Suite 303,
Burlington, VT  05401
802-951-1740
www.vermontjudiciary.org

Docket No. 23-ENV-00128



| Town of Duxbury v. Anthony Kessler |
|---|

## ENTRY REGARDING MOTION

Motion:       Partial Motion to Dismiss

Filer:        John L. Franco, Esq.

Filed Date:   September 19, 2024

Town of Duxbury Memorandum in Opposition to Motion to Dismiss, filed on November 1, 2024, by Beriah C. Smith, Esq.

Reply in Support of Motion to Dismiss, filed on November 15, 2024, by John L. Franco, Esq.

**The motion is DENIED.**

This is an enforcement action brought by the Town of Duxbury (Town) against Anthony Kessler regarding certain alleged zoning violations involving a primitive camp at his property having an address of 317 South Richardson Road, Duxbury, Vermont (the Property).[1]  Presently before the Court is Mr. Kessler's motion to partially dismiss aspects of this case due to alleged notice deficiencies in the underlying notice of violation regarding the violations at issue in this appeal.  The Town opposes this motion.

### Legal Standard

Mr. Kessler's motion was made pursuant to V.R.C.P. 12(b)(6).  The Town asserts that, because the motion comes well after the initial pleadings in this case, the motion is one for judgment on the pleadings pursuant to V.R.C.P. 12(c).  A Rule 12(b)(6) motion "shall be made before pleading if further pleading is permitted."  V.R.C.P. 12(b).  Conversely, a motion for judgment on the pleadings made pursuant to Rule 12(c) may be made "[a]fter pleadings are closed but within such time as not to delay

---

[1] It appears Mr. Kessler may dispute whether the Property was used as a "primitive camp."  When considering the standards applicable in a Rule 12(c) motion, however, we must consider this fact to be true.

trial." V.R.C.P. 12(c).[2] Because the motion was made after the pleadings are closed, it cannot be a Rule 12(b)(6) motion to dismiss. We will review the motion pursuant to Rule 12(c).[3]

When considering a Rule 12(c) motion, the question "is whether, once the pleadings are closed, the movant is entitled to judgment as a matter of law on the basis of the pleadings." Messier v. Bushman, 2018 VT 93, ¶ 9, 208 Vt. 261 (quotation omitted). "For the purposes of [a] motion [for judgment on the pleadings] all well pleaded factual allegations in the nonmovant's pleadings and all reasonable inferences that can be drawn therefrom are assumed to be true and all contravening assertions in the movant's pleadings are taken to be false." Thayer v. Herdt, 155 Vt. 448, 456 (1990) (quotation omitted). Granting a Rule 12(c) motion is appropriate only when, assuming "all factual allegations pleaded in the complaint are true," it is "beyond doubt that there exist no facts or circumstances that would entitle [the plaintiff] to relief." Powers v. Office of Child Support, 173 Vt. 390, 395 (2002); see also Messier, 2018 VT 93, ¶ 9 ("Review of the grant of a motion to dismiss and the grant of a motion for judgment on the pleadings employ similar standards."). The standard employed when reviewing Rule 12(c) motion is rigorous and such motions, much like a Rule 12(b)(6) motion, "are disfavored and should be rarely granted." Island Indus., LLC v. Town of Grand Isle, 2021 VT 49, ¶ 20, 215 Vt. 162 (quotation omitted).

## Discussion

An understanding of the factual background alleged in the Town's Verified Complaint with supporting exhibits is necessary to understand the pending motion. The Town's initial written correspondence with Mr. Kessler regarding the zoning violations at issue in this action was sent on June 17, 2023. See Complaint Ex. 2 (the June 2023 Letter). The June 2023 Letter was entitled a "RE: Warning of zoning violations" and was sent by the Town's Zoning Administrator (the Zoning Administrator). Id. The June 2023 Letter went on to state that Mr. Kessler was believed to be in violation of the Town of Duxbury Land Development Regulations (Regulations) in two respects. First, not largely relevant here, that the camp on the Property was expanded by enclosing a deck area without a zoning permit. Second, most relevant here, that the camp was being occupied full-time as a primary residence in violation of the Regulations' occupancy restrictions of a primitive camp. The

---

[2] The parties have stipulated to staying discovery in this case to allow for adjudication of the issues raised in the pending motion. As such, while the motion is filed 10 months after this action was initiated, there is no objection to the timeliness of the motion.

[3] Mr. Kessler has not objected to the consideration of the motion pursuant to V.R.C.P. 12(c) and correctly points out that the standards of review are very similar.

June 2023 Letter stated that "[t]o reside in the structure for more than 60 days a year, or more than 3 weeks at a time, it must be converted from a camp to a primary residence." Id. Mr. Kessler was then directed to apply for a zoning permit to address both activities and was provided a deadline to do so which, if not met, would result in the issuance of a notice of violation, which could lead to an enforcement action if not complied with. Id.

On August 14, 2023, the Zoning Administrator sent a formal Notice of Violation to Mr. Kessler stating that he was being noticed that he was in violation of cited Vermont statute and provisions of the Regulations, specifically Regulations § 3.1 and § 3.2, because he had "commenced land development without a permit by expanding the size of a structure's interior space by enclosing a deck, and by expanding/changing the use of the parcel from a primitive camp to a residence." Complaint Ex. 3 (the NOV). The NOV also informed Mr. Kessler that he was to discontinue the violations and comply with the Regulations or obtain a zoning permit within seven days of the date of the NOV and failure to do so may result in an enforcement action. The NOV also notified him of his right to appeal the NOV to the DRB. Id. Mr. Kessler did not appeal the NOV or cure all violations raised in the NOV. This enforcement action followed.

Mr. Kessler argues that the NOV with respect to the change in use of the Property does not provide adequate notice regarding the violation itself and his opportunity to cure. He therefore argues that the NOV with respect to the change in use violates his procedural due process rights such that it must be dismissed from this action.

Before addressing the merits of the motion, we note that the pending motion presents slightly awkward jurisdictional constraints. Mr. Kessler did not appeal the NOV and, therefore, it is final and binding even if issued in error. See 24 V.S.A. § 4472; see also City of S. Burlington v. Dep't of Corr., 171 Vt. 587, 588—89 (2000) (mem.). Thus, a determination of whether the NOV fully complied with 24 V.S.A. § 4451 is beyond our jurisdiction in this appeal.[4] Thus, because the NOV was not appealed, the motion is limited to arguing that the NOV, despite being final and binding on all parties, including Mr. Kessler, violates more general principles of due process.

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested

---

[4] The Court refers to this provision, however, as it is what the Legislature has provided as sufficient notice that a municipality must provide when it believes that an alleged zoning violator is in violation of applicable zoning regulations. Section 4451, by definition, defines what process is the Legislature has determined is due when a municipality seeks to issue a notice of violation. See In re Vermont Permanency Initiative, Inc. Denial, 2023 VT 65, ¶ 12 (setting forth the rules of statutory interpretation) (citations omitted).

parties of the pendency of the action and afford them an opportunity to present their objections." Town of Randolph v. Estate of White, 166 Vt. 280, 280 (1997) (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)). In the case of a notice of alleged violation, adequate notice requires "(1) the factual basis for the deprivation, (2) the action to be taken against them, and (3) the procedures available to challenge the action." Id. at 284 (holding that failure to inform a landowner of their statutory right to contest a zoning administrator's decision was a violation of due process).

Due process, however, "does not impose an unattainable standard of accuracy." Grannis v. Ordean, 234 U.S. 385, 395 (1914). As such, "[n]otice need not be technically perfect in every respect." Chester v. Carrara et al., No. 60-5-15 Vtec, slip op. at 2 (Vt. Super. Ct. Envtl. Div. Oct. 19, 2015) (Walsh, J.); see also Lively v. Northfield Sav. Bank, 2007 VT 110, ¶ 7, 182 Vt. 428 (stating that "[w]hen all of the parties to an action can plainly identify the person, place, or thing at issue" minor inaccuracies do not deprive parties of notice). Instead, this Court is directed to assess whether notice "apprise[d] the affected individual of, and permit[ted] adequate preparation for, an impending [enforcement action]." Memphis Light, Gas & Water Div. v. Graft, 436 U.S. 1, 14 (1978). As such, due process of law requires that notice is sufficient to "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited" and to "provide explicit standards for those who apply them." Grayned v. City of Rockford, 408 U.S. 104, 108 (1972).

Assessed with these standards, the Court concludes that a person of ordinary intelligence can determine the factual basis giving rise to the change in use violation set forth in the NOV. The NOV states that Mr. Kessler was being notified that he was in violation of 24 V.S.A. § 4491(a)(1) and Regulations Art. I, §§ 3.1, 3.2 in relevant part because he "expand[ed]/chang[ed] the use of the parcel from a primitive camp to a residence." Complaint Ex. 3. Regulations § 3.2(G) states that a zoning permit is required for any land development defined by statute or the Regulations, which includes but is not limited to "[t]he change of use of any existing structure or parcel of land, except that benign home occupations will not require a permit . . . ." Thus, the NOV states the provision of the Regulations Mr. Kessler was in violation of. The NOV then goes on to provide the factual basis for that violation by stating that Mr. Kessler had allegedly "expand[ed]/chang[ed] the use of the parcel from a primitive camp to a residence." Complaint Ex. 3.[5] Regulations § 3.2, cited in the NOV, makes clear that a change in use requires a zoning permit. The NOV then states that the Property's use had

---

[5] Both statements are required by 24 V.S.A. § 4451(a)(2)(A) and (B).

changed in its nature from a primitive camp to a residence. This is sufficient factual basis to allow Mr. Kessler to have notice of the violation raised in the NOV.

Mr. Kessler asserts that the NOV should have included a litany of factual allegations regarding his use of the Property and the use that gave rise to the NOV to satisfy due process requirements. Specifically, he states that the NOV should have alleged how Mr. Kessler established a "dwelling," as that term is defined by the Regulations, how he has "engaged in unpermitted seasonal or permanent residential use of such 'dwelling'," how he established a primitive camp at the Property, and how he was using the Property in a manner that violated the primitive camp duration limitations or exceed the durational limits of the use of a recreational vehicle or travel trailer. This level of information rises above what is required for due process. Process here required the Town to inform Mr. Kessler of the provisions of the law they believed him to be in violation of and the factual basis for that conclusion. It does not require the Town to establish in the NOV such a lengthy history of potentially relevant factual background, but instead just the basis for the conclusion that there was a violation. The NOV, for the reasons set forth above, does this.

Again, due process need only be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." White, 166 Vt. 280, 280 (quotation omitted). The notice in this case did just that. While we conclude that the NOV is sufficient on its face, this is particularly true when considering that Mr. Kessler was apprised of a change in use violation two months earlier through the June 2023 Letter.[6]

---

[6] Mr. Kessler argues that the June 2023 Letter cannot be used to provide context for the NOV because reviewing the letter would constitute "independent research" under White. White does not prevent the June 2023 Letter from providing context. In White, a notice of violation failed to include information regarding an alleged violator's right to appeal the notice of violation to the appropriate municipal panel as set forth in 24 V.S.A. § 4464 and that such an appeal is the exclusive remedy for challenging the notice of violation. 166 Vt. at 283. The Vermont Supreme Court concluded that the failure to provide that information violated due process in part because "notice provided to people of various levels of education, experience and resources should clearly inform the party of the availability of an opportunity to be heard." Id. at 286. The independent research required in White included independent statutory and legal research to determine one's rights and obligations under the law. This is fundamentally dissimilar from Mr. Kessler reviewing or simply being aware of the June 2023 Letter regarding alleged violations at the Property. It is not disputed that Mr. Kessler received the letter and that he is aware of it. This background knowledge of the Town's concerns with the change of use of the Property is not "independent research" but is instead information that Mr. Kessler already knew at the time that he received the NOV. One does not need to conduct research to retain and employ personal, actual knowledge of the events leading up to the NOV. To the extent that Mr. Kessler argues that reviewing the Regulations themselves constitute independent research making the NOV or the June 2023 Letter insufficient for notice purposes, this assertion is unsupported by reason and 24 V.S.A. § 4451(a)(2)(A), which simply must state "the bylaw . . . alleged to have been violated."

If Mr. Kessler disputed any allegation of violation, he had an obligation to appeal the NOV. He did not do so.

Further, Mr. Kessler argues that the NOV is deficient because it did not notify him of the manner to cure the violations.[7] First, the NOV states that he can either discontinue the violations enumerated therein which, for the reasons set forth above, are sufficiently clear for an ordinary person to understand the basis of that violation and what is being addressed, or obtain a zoning permit for the activities. Complaint Ex. 3. This information is sufficient to provide an alleged violator with notice of how to bring their property into compliance with the Regulations. Second, even if it were not clear, Mr. Kessler points to no provision of law or regulation that would require notices of violations to provide step by step instructions on how to cure the violations set forth therein.[8] The NOV's provision of notice of that Mr. Kessler had the opportunity to cure the violations at issue is sufficient.

Finally, Mr. Kessler argues that the NOV, issued in 2023, does not address any alleged violation that occurred in 2024 because Mr. Kessler had the opportunity to reside at the Property within the duration afforded to him by the Regulations related to primitive camps beginning in 2024. He argues that a new notice of violation was required if the Town wanted to pursue enforcement for any change in use violation in 2024. The Town does not dispute that Mr. Kessler was allotted some duration to stay at the Property when the new year began. The Town did not, however, need to send a new notice of violation for 2024. Pursuant to § 4451(a), an enforcement action "may be brought without the seven-day notice and opportunity to cure if the alleged offender repeats the violation of the bylaw or ordinance after the seven-day notice period and within the next succeeding 12 months." The Town alleges that Mr. Kessler has repeated the same violation at issue in the NOV within 12 months of the NOV, which provided him notice and an opportunity to cure the violation. Section 4451(a) is clear on its face that a new notice of violation was not necessary in 2024.

---

[7] To the extent that Mr. Kessler argues that the NOV is deficient because it "does not say what land use was unacceptable" this is contrary to the contents of the NOV which, by definition, enumerates what land uses the Town has deemed to be unacceptable and, therefore, a violation of the Regulations. Here, as set forth above, it states that "expanding/changing the use of the parcel from a primitive camp to residence" was a violation. Complaint Ex. 3. Additionally, it is for this reason that Mr. Kessler's reliance on In re Handy is unavailing. Handy addressed standards applied to zoning applications when a new zoning bylaw is being considered. 171 Vt. 336 (2000). It does not address notices of violations issued pursuant to § 4451. It is irrelevant in this context and for the reasons set forth in this Entry Order.

[8] Section 4451(a)(1), related to seven-day warning notices requires that the notice state "that an alleged offender has an opportunity to cure." It does not require that the notice include complete instructions of how to do so, just that there is an opportunity to do so.

For these reasons, the NOV is sufficient and satisfies due process requirements regarding both violations set forth therein. The motion is, therefore, **DENIED**. Discovery in this matter was stayed pending disposition of Mr. Kessler's motion to dismiss by stipulation. Per the stipulation, the parties shall file an amended proposed scheduling order with the Court within seven days of this Entry Order. Electronically signed December 9, 2024 pursuant to V.R.E.F. 9(D).

Thomas G. Walsh, Judge
Superior Court, Environmental Division