2011 VT 21



Samis v. Samis (2010-031)

 

2011 VT 21

 

[Filed 18-Feb-2011]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions, Vermont Supreme Court, 109 State Street, Montpelier,
 Vermont05609-0801
of any errors in order that corrections may be made before this opinion goes to
press.

 

 


 2011 VT 21 
 
  


 No. 2010-031
 
  


 Catherine S. Samis 
 
 
 Supreme Court
 
 
  
 
 
  
 
 
  
 
 
 On Appeal from
 
 
      v.
 
 
 Orleans Family Court
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Philip Samis
 
 
 August Term, 2010
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Robert
 R. Bent, J.
 
 
  
 
 Benjamin W. King of The King Law Offices, PLLC, Burlington, for
Plaintiff-Appellee.

 

William W. Cobb of Law Offices of William W. Cobb, PLC, Hyde Park, for 

  Defendant-Appellant.

 

 

PRESENT:  Reiber, C.J., Johnson, Skoglund and Burgess,
JJ., and Eaton, Supr. J., 

                   
Specially Assigned.

 

 

¶ 1.            
JOHNSON, J.  Husband appeals the decisions of the Orleans
Family Court granting divorce, distributing property, and awarding spousal
maintenance after wife’s guardian filed for divorce on her behalf. 
Husband raises three arguments on appeal: (1) the trial court erred in denying
his motion to dismiss wife’s divorce action because her guardian lacks standing
to initiate a divorce proceeding on her behalf; (2) the trial court erroneously
allowed wife’s guardian to bring and maintain a divorce action on her behalf;
and (3) the trial court abused its discretion by awarding wife excessive
spousal maintenance and one of their homes.  We agree with husband that
the lower court erred in its denial of his motion to dismiss. 
Accordingly, we reverse.      

¶ 2.            
Husband and wife married in 1983 in Montreal.  Husband is a Canadian citizen
currently living in Toronto. 
Wife is a U.S. citizen and
resident of Vermont. 
This is a second marriage for both.  During the majority of their
marriage, they maintained separate residences—wife in Vermont
and husband in Montreal—but
lived together.  Husband and wife divided their time between the United States and Canada to preserve their respective
residency and benefit statuses in each country.  Both husband and wife are
now over eighty years old.  Each depends on the medical care and payment
system of his or her country of citizenship. 

¶ 3.            
Wife was diagnosed with dementia in early 2007.  Wife’s dementia
renders her unable to make decisions in her own interest.  She is unable
to form new memories and does not remember current happenings after five or six
minutes.  Husband reacted strongly to her diagnosis, announcing that he
needed to leave wife to move to Toronto and
removing many things from their shared and jointly owned home in Irasburg, Vermont. 
At that time, wife’s son from her first marriage, Gregory Morcroft, applied for
guardianship of wife. 

¶ 4.            
Following some litigation, wife’s guardianship was made permanent in
June 2007 by stipulation of Gregory and husband.  The probate court issued
a decision approving this stipulation and appointing Gregory guardian for wife
with all the powers of guardianship.  The stipulation provided that
guardian and husband would cooperate in financial and Medicaid planning for
wife, anticipating that wife’s financial resources might be insufficient to
provide for her care. 

¶ 5.            
Guardian first filed a complaint for divorce on behalf of wife in August
2007.  Relations between guardian and husband, already tense,
worsened.  Guardian filed a motion for injunctive relief, which the
probate court granted, restricting husband’s contact with wife.  Husband
filed a motion to set aside the stipulation and decision appointing guardian
and a motion for modification of the guardianship.  The probate court
denied both.  Husband and guardian’s relationship deteriorated to the
point that they were unable to make joint decisions regarding wife.  Most
relevantly, guardian had difficulty obtaining from husband the financial
support necessary for wife’s care.  Guardian sought a divorce for wife to
permit her to apply for social security benefits on the account of her first
husband, which she was barred from doing while married to husband.

¶ 6.            
In September 2007, husband filed a motion to dismiss the divorce
complaint, arguing that wife’s guardian did not have authority under the
guardianship statute, 14 V.S.A. § 3069, to initiate a divorce
proceeding on her behalf.  Responding to wife’s financial needs for
medical care, the family court denied the motion to dismiss and allowed the
divorce action to proceed.  The court concluded that, despite the absence
of authorization in § 3069, Vermont Rule for Family Proceedings 4(b)(1)(A)
allows guardians to file for divorce on behalf of persons under
guardianship.  Moreover, the court determined that public policy required
that guardian be authorized to bring the divorce action on wife’s behalf. 
We denied husband’s request to take an interlocutory appeal on this matter.
     

¶ 7.            
Having decided that the divorce complaint could stand, the family court
then bifurcated the contested divorce proceedings, first making a determination
concerning the marriage and subsequently determining the property and spousal
maintenance issues.  Following evidentiary hearings on the matter of the
divorce, the court granted the no-fault divorce petition under 15
V.S.A. § 551(7), finding that the guardian, on behalf of wife,
established that she and husband had “lived separate and apart for a period of
six consecutive months, the resumption of marital relations not being
reasonably probable.”  The court explained that a no-fault divorce did not
require that both parties desire divorce, and reiterated that, per its decision
on the motion to dismiss, wife had a guardian capable of bringing this divorce
action and of representing her in this matter.

¶ 8.            
After additional hearings, the court issued its decision regarding
property distribution, spousal maintenance, and attorneys’ fees.  The
court awarded the entire interest in the Irasburg home to wife.  Although
husband and wife jointly acquired and owned this asset, the court emphasized
that the property was maintained as wife’s home.  Because the court “[did]
not believe that [husband would] be cooperative toward timely payment of his
spousal maintenance obligation” based on husband’s past behavior, it awarded
wife a lump-sum award of spousal maintenance in the amount of $250,000,
attorneys’ fees of $20,000, and $20,000 for past-due maintenance under the
court’s interim order.  This appeal followed.

¶ 9.            
Husband contends that, because guardian lacks authority under the
statute delineating the powers of a guardian, 14 V.S.A. § 3069, to initiate a
divorce proceeding on behalf of a person under guardianship, the trial court
erred in denying his motion to dismiss the divorce petition.[1]  The purpose of a motion to dismiss
for failure to state a claim upon which relief can be granted is to test the
law of the claim, not the facts that support it.  Powers v. Office of
Child Support, 173 Vt.
390, 395, 795 A.2d 1259, 1263 (2002); see V.R.C.P. 12(b)(6).  A motion to
dismiss should be granted only when it is beyond doubt that there exist no
facts or circumstances that would entitle the nonmoving party to relief.  Powers,
173 Vt. at
395, 795 A.2d at 1263.  On review of the trial court’s determination of
the motion to dismiss, we assume the truth of all factual allegations pleaded
in the complaint and all reasonable inferences that may be derived from the
pleadings.  Elkins v. Microsoft Corp., 174 Vt. 328, 330, 817 A.2d 9, 12 (2002). 
To the extent that our review of the trial court’s decision involves questions
of statutory construction and, thus, questions of law, it is nondeferential and
plenary.  Id.

¶ 10.        
The court below acknowledged that 14 V.S.A. § 3069 does not specify
filing a complaint for divorce to be one of the guardian’s powers.  It
relied instead on Vermont Rule for Family Proceedings 4(b)(1)(A).  Rule
4(b)(1)(A) states: 

The complaint in an
action for divorce . . . shall be signed and sworn to by
the plaintiff, if of sound mind and of the age of 16 years.  Otherwise it
may be signed and sworn to by the guardian, guardian ad litem or next friend of
the plaintiff.

 

Because wife has been adjudicated
mentally incompetent, the family court interpreted Rule 4(b)(1)(A) to authorize
the guardian to sign the divorce complaint on her behalf.  According to
the court, this rule “indicates a willingness on behalf of the Court to allow a
guardian to initiate a divorce proceeding on behalf of a ward.”  The court
found no conflict between that rule and the omission of this power from 14
V.S.A. § 3069’s enumerated list of guardian powers.  In addition, the
court concluded that public policy requires that a guardian have authority to
initiate a divorce on behalf of a person under guardianship, reasoning that it
would be unfair for a person under guardianship to lose her ability to seek a
divorce while her spouse retains that ability.  The court found that the
guardian’s legal obligation with respect to wife overcame any possible
objections about the guardian’s potential conflict of interest.

¶ 11.        
Husband argues that the trial court improperly interpreted Rule
4(b)(1)(A), allowing it to expand the scope of 14 V.S.A. § 3069.  We agree. 
The Vermont Constitution gives the Court rule-making authority.  Vt.
Const. ch. II, § 37 (“The Supreme Court shall make and promulgate rules
governing the administration of all courts, and shall make and promulgate rules
governing practice and procedure in civil and criminal cases in all
courts.  Any rule adopted by the Supreme Court may be revised by the
General Assembly.”); see State v. Corliss, 145 Vt. 169, 172, 484 A.2d 924, 925
(1984).  Section 1 of Title 12 cautions, however, that “[t]he rules thus
prescribed or amended shall not abridge, enlarge or modify any substantive
rights of any person provided by law.”  Although the rules we create have
the force and effect of law, they cannot create substantive rights not created
by the Legislature.  Contrary to the family court’s analysis, the
authority for a guardian to initiate a divorce on behalf of a person under
guardianship cannot come solely from a procedural rule promulgated by this
Court.[2] 
Because there is no independent authority in Rule 4(b)(1)(A), the trial court’s
decision may be affirmed only on statutory grounds.     

¶ 12.        
Section 3069(c) of Title 14 enumerates the specific powers that can be
granted to a guardian: to exercise general supervision over the person under
guardianship; to seek, obtain, and give or withhold consent to medical or
dental treatment; to exercise general financial supervision over the income and
resources of the person under guardianship; to approve or disapprove of most contracts
the person under guardianship wishes to make; to approve or disapprove of the
sale or encumbrance of real property of the person under guardianship; and to
obtain legal advice and to commence or defend against court actions in the name
of the person under guardianship.  The only place in the statute that the
power to initiate a divorce on behalf of a person under guardianship could come
from is the “power to obtain legal advice and to commence . . . court actions
in the name of the person under guardianship.”
14 V.S.A. § 3069(c)(6).  The question is whether this
general grant of authority to the guardian includes the specific power to bring
a divorce petition. 

¶ 13.        
A century and a half ago, we held that “the right to bring [a divorce]
petition is strictly personal.”  Richardson v. Richardson, 50 Vt. 119, 121-22 (1877)
(holding that because right to bring divorce petition is strictly personal,
person under only financial guardianship can bring petition in own name). 
We have not revisited this particular issue in modern times, but we have more
recently acknowledged that marriage is a “ ‘vital personal
right[].’ ”  Baker v. State, 170 Vt. 194, 220, 744 A.2d 864,
883 (1999) (quoting Loving v. Virginia, 388 U.S. 1, 12 (1967)).  

¶ 14.        
The majority of appellate courts in other jurisdictions that have
interpreted similar statutes have held that, absent explicit statutory language
authorizing a guardian to initiate a divorce action on behalf of a person under
guardianship, general guardianship statutes do not give a guardian such
authority.  The New York Court of Appeals, for example, has held that
guardians may not maintain divorce actions on behalf of incompetent
spouses.  Mohrmann v. Kob, 51 N.E.2d 921, 925 (N.Y. 1943). 
The court stated that the New York statute granting a guardian the power to
maintain “any action” in the name of the ward did not include an action for
divorce because the legislature had always treated divorce separately and
allowing a guardian to maintain a divorce action would “invade[] a field
reserved exclusively for the legislative function.”  Id. at
924.  It highlighted the key role that volition and choice play in both
the creation and dissolution of a marriage.  Id.  Similarly,
in Murray ex rel. Murray v. Murray, the South Carolina Supreme Court
adopted “the majority rule” that a guardian may not bring an action for divorce
on behalf of a person under guardianship.  426 S.E.2d 781, 784 (S.C.
1993).  As that court emphasized:

Although there are
statutes in practically every jurisdiction which give a guardian the general
authority to maintain actions on behalf of an incompetent, it is generally held
that these statutes do not apply to divorce actions unless the statute
expressly so states.  The theory underlying the majority view is that a
divorce action is so strictly personal and volitional that it cannot be
maintained at the pleasure of a guardian, even if the result is to render the
marriage indissoluble on behalf of the incompetent.   

 

Id. at 783-84.  The
Court of Appeals of Kentucky held in Johnson v. Johnson that a
guardianship statute that excepted no specific types of action did not
authorize a guardian of a ward to bring a divorce action on his behalf. 
170 S.W.2d 889, 890 (Ky. 1943).  According to the court, the legislature,
in conferring this general authority on the guardian, did not intend to vest a
guardian with power over the ward’s strictly personal and volitional affairs to
the extent of controlling his marital status.  Id.    


¶ 15.        
The jurisdictions that do allow guardians to sue for divorce on behalf
of persons under guardianship have generally relied on statutory language
granting such power.  The New Hampshire Supreme Court recently held that a
guardian could maintain a divorce action on behalf of a ward because the person
under guardianship had initiated the divorce petition before he was deemed
incompetent and because of a “catchall” provision present in the New Hampshire
guardianship statutory scheme that authorized the probate court to impose
additional duties upon a guardian, including the authority to exercise his
right to divorce.  In re Salesky, 958 A.2d 948, 954-55 (N.H.
2008).  The Supreme Judicial Court of Massachusetts has held that a
Massachusetts statute specifically allowing a guardian or next friend to sign a
divorce libel authorized guardians to file divorce actions on behalf of legally
incompetent individuals.  Cohn v. Carlisle, 37 N.E.2d 260, 262
(Mass. 1941); Cowan v. Cowan, 1 N.E. 152, 152 (Mass. 1885); Garnett
v. Garnett, 114 Mass. 379, 380 (1874).  This explicit statutory
directive led the court in Cowan to reject the argument that a divorce
should not be granted because an incompetent spouse had no volition.  1
N.E. at 152.

¶ 16.        
Even those courts that have held that guardians can petition for divorce
without explicit statutory authorization have acknowledged that their decisions
are contrary to the majority rule.  See, e.g., Ruvalcaba ex rel.
Stubblefield v. Ruvalcaba, 850 P.2d 674, 679-81 (Ariz. Ct. App. 1993) (permitting
guardian to bring divorce action while acknowledging that majority of
jurisdictions have held divorce is strictly personal and cannot be initiated by
guardian); In re Marriage of Gannon, 702 P.2d 465, 467 (Wash. 1985)
(holding that as general rule guardian cannot dissolve marriage of person under
guardianship because marriage is so personal, but there are circumstances where
court may authorize guardian to seek dissolution).

¶ 17.        
Like the majority of jurisdictions around the country, we continue to
conclude that the right to end a marriage through divorce is volitional and
personal such that the Legislature did not intend, through a general grant of
authority, to permit it to be carried out by a guardian.   If we were
to imply this power, we would encroach on an area that the Legislature has seen
fit to address by statute, and without any airing of the multiple issues of
public policy that might be relevant to the question.  Without specific
authority in 14 V.S.A. § 3069(c)(6), therefore, guardian was without power to
file a divorce on wife’s behalf, and husband’s motion to dismiss should have
been granted.  Insofar as wife’s guardian has had difficulty obtaining
financial support and cooperation from husband, guardian may petition the
family division for an order of support or another appropriate order. 
Because we reverse the grant of divorce, we need not reach husband’s additional
arguments regarding property division and spousal maintenance.

Reversed. 

 

 


  
 
 
  
 
 
 FOR THE COURT:
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Associate
 Justice
 
  











[1] 
Wife argues that husband did not preserve for review his argument that the family
court erroneously allowed wife’s guardian to bring and maintain a divorce
action on behalf of wife because Title 15, which governs divorces, does not
authorize a guardian to do so.  We agree that husband did not explicitly
make this Title 15 argument below,  Progressive Ins. Co. v. Brown ex
rel. Brown, 2008 VT 103, ¶ 6, 184 Vt. 388, 966 A.2d 666 (“[I]n order to
rely upon an argument on appeal, an appellant must properly preserve it by
presenting it to the trial court with specificity and clarity.” (quotation
omitted)), but we note that Title 15, Chapter 11 was necessarily implicated by
the court’s decision that a guardian can initiate a divorce proceeding. 
See Vt. Built, Inc. v. Krolick, 2008 VT 131, ¶ 10, 185 Vt. 139, 969 A.2d
80 (explaining that the preservation rule is satisfied when the trial court had
“a fair opportunity to consider, evaluate and rule upon” the question raised on
appeal (quotation omitted)).  We confine our analysis to whether the trial
court erred in finding that Rule 4(b)(1)(A) allows a guardian to initiate a
divorce even though “14 V.S.A. § 3069 does not list filing a complaint for
divorce as one of the guardian’s enumerated powers,” while observing that no
part of Title 15 grants a guardian authority to initiate a divorce on behalf of
a person under guardianship.  Indeed, wife has not argued, apart from
labeling husband’s Title 15 argument “baseless,” that the language of Title 15 does
give a guardian authority to maintain a divorce proceeding.    

   





[2] 
Because we decide that Rule 4(b)(1)(A) cannot provide authority not otherwise
present in the guardianship statute, we do not address the family court’s
interpretation of its language.