Kane v. Lamothe (2006-229)

2007 VT 91

[Filed 24-Aug-2007]


 NOTICE: This opinion is subject to motions for reargument under
 V.R.A.P. 40 as well as formal revision before publication in the Vermont
 Reports. Readers are requested to notify the Reporter of Decisions,
 Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801 of
 any errors in order that corrections may be made before this opinion goes
 to press.


 2007 VT 91

 No. 2006-229


 Joanne Kane Supreme Court

 On Appeal from
 v. Franklin Superior Court


 Trooper Maurice Lamothe March Term, 2007
 and the State of Vermont


 Geoffrey W. Crawford, J.

 Kurt M. Hughes and Margaret Glazier, Legal Assistant (On the Brief) of
 Murdoch Hughes & Twarog, Burlington, for Plaintiff-Appellant.

 William H. Sorrell, Attorney General, and Eve Jacobs-Carnahan, Assistant
 Attorney General, Montpelier, for Defendants-Appellees.


 PRESENT: Reiber, C.J., Dooley, Johnson, and Burgess, JJ.

 
 ¶ 1. BURGESS, J. Plaintiff appeals from a trial court order
 dismissing her claims of negligence and gross negligence against defendants
 State of Vermont and Trooper Maurice Lamothe. These claims arise from an
 alleged failure by the trooper to properly investigate a reported incident
 of domestic abuse against plaintiff that continued after the trooper left
 the scene. We conclude that the State and the trooper owed no special duty
 to plaintiff. We therefore affirm the trial court's dismissal. (FN1)
 
 ¶ 2. In reviewing a motion to dismiss, we accept all of the
 nonmoving party's alleged facts as true to determine whether there are any
 circumstances that may entitle that party to relief. Alger v. Dep't of
 Labor & Indus., 2006 VT 115, ¶ 12, __ Vt. __, 917 A.2d 508. "We treat all
 reasonable inferences from the complaint as true, and we assume that the
 movant's contravening assertions are false." Id. 

 ¶ 3. Plaintiff's complaint alleges the following relevant facts. On
 November 18, 2002, plaintiff's former boyfriend sexually assaulted and
 battered her, leaving visible marks. The boyfriend had a history of
 domestic violence and was on probation at the time of the assault. After
 the sexual assault and battery, plaintiff's son told the clerk at a nearby
 store that plaintiff was still in danger. The clerk called 911, and the
 trooper responded. Plaintiff's son showed the trooper to plaintiff's
 apartment, where the boyfriend opened the door and let him in. The trooper
 interviewed the boyfriend separately while plaintiff was in the bedroom. 
 After that interview, the boyfriend retrieved plaintiff from the bedroom,
 and the trooper interviewed plaintiff in the apartment doorway within
 earshot of the boyfriend. The trooper observed the marks on plaintiff's
 face, but left the apartment without making an arrest or investigating
 further. After the trooper left, the boyfriend sexually assaulted and
 battered plaintiff a second time. 
 
 ¶ 4. In the early morning hours of the following day, the
 boyfriend broke into plaintiff's apartment and again beat and sexually
 assaulted her. Afterwards, he dragged plaintiff down the stairs, causing
 her bodily injury that required medical attention. At the hospital,
 plaintiff was treated for a bruised lip, depression, anxiety, and post-rape
 trauma. A week later, the boyfriend was taken into custody and charged
 with second-degree aggravated domestic assault, burglary and sexual
 assault. He was found guilty of domestic assault and sexual assault and
 was sentenced to twenty to forty-five years.


 ¶ 5. Plaintiff subsequently filed the present suit, claiming that
 negligent supervision of the trooper by the State and gross negligence by
 the trooper led to the continued physical and sexual abuse of plaintiff. 
 Defendants moved to dismiss, arguing that sovereign immunity barred the
 claims against the State under the Vermont Tort Claims Act, 12 V.S.A. §§
 5601-06, and further arguing that plaintiff failed to state a claim of
 gross negligence, as was necessary to overcome the trooper's statutory
 immunity. The court granted the motion, holding that plaintiff's claims
 against the State were not permitted under the Tort Claims Act because
 there was no private analog to the police action at issue, and the
 allegations against the trooper failed to depict the total absence of care
 required to support a claim of gross negligence. (FN2) Plaintiff appealed. 
 
 ¶ 6. Under the doctrine of sovereign immunity, claims against the
 State are barred "unless immunity is expressly waived by statute." Sabia
 v. State, 164 Vt. 293, 298, 669 A.2d 1187, 1191 (1995). The Tort Claims
 Act waives immunity in cases where liability arises from "injury to persons
 . . . caused by the negligent or wrongful act or omission of an employee of
 the State while acting within the scope of employment, under the same
 circumstances, in the same manner and to the same extent as a private
 person would be liable to the claimant . . . ." 12 V.S.A. § 5601(a). 
 "Thus, the State remains immune for governmental actions for which no
 private analog exists" and "waives its immunity only to the extent a
 plaintiff's cause of action is comparable to a recognized cause of action
 against a private person." Sabia, 164 Vt. at 298, 669 A.2d at 1191
 (quotations omitted). This approach bars negligence actions against the
 State in connection with purely "governmental functions" so as to avoid
 imposing "novel and unprecedented liabilities" on the State. Denis Bail
 Bonds, Inc. v. State, 159 Vt. 481, 485-86, 622 A.2d 495, 498 (1993).

 ¶ 7. Before determining whether a private analog exists, we must
 first determine whether the factual allegations satisfy the necessary
 elements of a recognized cause of action. See id. at 487, 622 A.2d at 498.
 (FN3) To prove negligence, plaintiff must show that defendant owed her a
 legal duty, that a breach of that duty was a proximate cause of harm, and
 that she suffered actual damages. Watson v. Dimke, 2005 VT 29, ¶ 9, 178
 Vt. 504, 872 A.2d 337 (mem.). In this case, as in most cases of negligence
 against the State, the decisive element is duty. See, e.g., Denis Bail
 Bonds, 159 Vt. at 487-90, 622 A.2d at 499-500 (holding that State owed no
 duty to insurer to disclose evidence of misconduct by insurer's agent). 
 
 ¶ 8. Ordinarily, the duty owed between strangers does not extend to
 controlling the conduct of third persons to prevent physical harm. See
 Breslauer v. Fayston Sch. Dist., 163 Vt. 416, 420, 659 A.2d 1129, 1132
 (1995). Thus, if the trooper had simply been a passerby happening upon the
 scene he would have had no duty to protect plaintiff from being harmed by
 her boyfriend. (FN4) However, in certain circumstances the State may take
 upon itself a greater, special duty. In determining whether a government
 agency has undertaken a special duty of care to a specific person beyond
 that extended to the general public, we consider: 

 (1) whether a statute sets forth mandatory acts for the protection
 of a particular class of persons; (2) whether the government has
 knowledge that particular persons within that class are in danger;
 (3) whether those persons have relied on the government's
 representations or conduct; and (4) whether the government's
 failure to use due care would increase the risk of harm beyond
 what it was at the time the government acted or failed to act.

 Sabia, 164 Vt. at 299, 669 A.2d at 1191. 
 
 ¶ 9. The State's law enforcement duties are provided for by
 statute. The Department of Public Safety was created "to promote the
 detection and prevention of crime generally." 20 V.S.A. § 1811. Included
 within the Department are the state police, who "shall be peace officers
 and shall have the same powers with respect to criminal matters and the
 enforcement of law relating thereto as sheriffs, constables, and local
 police." Id. § 1914. As the trial court concluded, the statutes create no
 special relationship between crime victims and law enforcement personnel: 
 "The officer's duty is owed to the community as a whole. It obviously
 encompasses the protection of crime victims, but it is shaped primarily by
 the need to investigate and prosecute crimes." Cf. Corbin v. Buchanan, 163
 Vt. 141, 144, 657 A.2d 170, 172 (1994) (noting "the absence in Vermont of
 any general inference of a private action based on government regulations
 whose clear purpose is the general welfare"). The statutes do not set
 forth any mandatory acts, much less mandatory acts for the protection of a
 particular class of persons. Because the statutes do not create a special
 duty, plaintiff relies on provisions of a police manual to establish one.
 
 ¶ 10. The Vermont State Police Rules & Regulations, Operational
 Policies & Procedures ("Manual") sets forth specific procedures for
 investigating a report of domestic violence. The procedures include
 interviewing all parties separately and obtaining a sworn statement from
 the victim. Manual, § 5, Article VIII, 4.1(A)(2). The Manual also states
 that "[a]rrest is the Department's preferred response to domestic violence
 because arrest offers the greatest potential for ending the violence." Id.
 § 5, Article VIII, 4.2(A). As the Manual recognizes, however, an arrest
 may be made only when "there is sufficient evidence to establish probable
 cause." Id. § 5, Article VIII, 4.2(B). This arrest language is in
 contrast to the statutorily mandated acts we found sufficient to create a
 special duty in Sabia, where the Legislature required that the agency
 responsible for child welfare "shall" undertake certain specific procedures
 after receiving a report of child abuse. 164 Vt. at 299, 669 A.2d at 1191. 
 Furthermore, because a police officer's decision to arrest, even under the
 Manual, is inherently discretionary, Town of Castle Rock v. Gonzales, 545
 U.S. 748, 760 (2005) ("A well established tradition of police discretion
 has long coexisted with apparently mandatory arrest statutes."), we cannot
 conclude that the Manual created a duty to plaintiff to arrest the
 boyfriend. See also V.R.Cr.P. 3(a), (b) ("A law enforcement officer may
 arrest without warrant a person whom the officer has probable cause to
 believe has committed or is committing a felony [or a misdemeanor in the
 officer's presence]" (emphasis added)). 

 ¶ 11. Additionally, the Manual has not been adopted as a rule
 pursuant to the Vermont Administrative Procedure Act, 3 V.S.A. §§ 836-44,
 and lacks the authority of a statute or regulation. Our test of whether a
 specific duty exists asks "whether a statute sets forth mandatory acts for
 the protection of a particular class of persons." Sabia, 164 Vt. at 299,
 669 A.2d at 1191 (emphasis added). Generally, internal policies and
 manuals provide preferred standards but not legal requirements for which
 individuals may hold the State liable. Searles v. Agency of Transp., 171
 Vt. 562, 564, 762 A.2d 812, 814 (2000) (mem.) (holding that State was
 immune from alleged negligent failure to place warning sign at intersection
 because placing sign was a discretionary function). Police guidelines and
 procedures set forth in manuals do not have the same authority as statutes
 and ordinances. Though such manuals may direct or recommend the manner in
 which Department employees perform statutorily prescribed duties and may
 define an employee's duty to his or her employer, they do not create a duty
 to third parties. Kugel v. United States, 947 F.2d 1504, 1507-08 (D.C.
 Cir. 1991) (violation of FBI's internal investigation "Guidelines" rejected
 as basis for duty in a negligence action); Dep't of Highway Patrol v.
 Pollack, 745 So. 2d 446, 450 (Fla. Ct. App. 1999) (per curiam) (collecting
 cases), aff'd, 882 So.2d 928, 936-37 (Fla. 2004) (per curiam) ("While a
 written policy or manual may be instructive in determining whether the
 alleged tortfeasor acted negligently in fulfilling an independently
 established duty of care, it does not itself establish such a legal duty
 vis-a-vis individual members of the public."). Absent a specific duty owed
 to plaintiff, we need not reach the questions of private analog or whether
 any other exceptions to the Tort Claims Act apply. See Denis Bail Bonds,
 159 Vt. at 490, 622 A.2d at 500.
 
 ¶ 12. Having concluded that the State did not owe a special duty to
 plaintiff that would support a claim of negligence, we consider plaintiff's
 claim of gross negligence by the trooper. (FN5) Gross negligence is a
 "heedless and palpable violation of legal duty respecting the rights of
 others." Shaw v. Moore, 104 Vt. 529, 531, 162 A. 373, 374 (1932). "Gross
 negligence is more than an error in judgment," Hardingham v. United
 Couseling Service of Bennington County, Inc., 164 Vt. 478, 481, 672 A.2d
 480, 482 (1995) (quotation and citations omitted), it is the failure to
 exercise "even a slight degree of care" owed to another. Mellin v. Flood
 Brook Union Sch. Dist., 173 Vt. 202, 220, 790 A.2d 408, 423 (2001)
 (quotations and citations omitted). Whether an individual was grossly
 negligent is ordinarily a jury question, except where reasonable people
 cannot differ. Id. The trial court ruled that the facts alleged - the
 trooper responded to a report of domestic violence, found a bruised and
 bleeding victim, interviewed her within earshot of her boyfriend, and left
 without arresting the boyfriend - did not rise to the level of gross
 negligence as a matter of law. 
 
 ¶ 13. On appeal, plaintiff recounts the trooper's numerous alleged
 violations of the Manual in support of her argument for gross negligence. 
 Plaintiff, however, had no right to have the boyfriend arrested by the
 trooper, either pursuant to the law of arrest or under the Manual. Nor did
 the trooper fail to respond to the distress call made on plaintiff's
 behalf. As discussed above, the Manual created no duty to plaintiff, and
 the trooper was under no obligation to plaintiff to follow certain
 procedures. Assuming, for the sake of argument, that the trooper might
 have better investigated the matter and exercised his discretion
 differently, plaintiff nevertheless failed to set forth a wholesale absence
 of care or indifference to duty owed to her, as is necessary to state a
 viable claim for gross negligence. See Hardingham, 164 Vt. at 483, 790
 A.2d at 484 ("[A]n error of judgment or a loss of presence of mind . . .
 could be viewed as negligent, but not grossly negligent."). Accordingly,
 in the absence of a duty, the claim of gross negligence was properly
 dismissed.

 ¶ 14. Finally, plaintiff contends that dismissal was premature
 because she did not have adequate time for discovery. However, in deciding
 the motion to dismiss, all of plaintiff's allegations were accepted as
 true. The purpose of a motion to dismiss "is to test the law of the claim,
 not the facts which support it." Powers v. Office of Child Support, 173
 Vt. 390, 395, 795 A.2d 1259, 1263 (2002). Thus, discovery should be
 unnecessary to determine whether the alleged facts support the requested
 relief, and the trial court did not err in precluding further discovery by
 granting the motion to dismiss. 

 Affirmed.


 FOR THE COURT:



 _______________________________________
 Associate Justice


------------------------------------------------------------------------------
 Footnotes


FN1. The State moved to strike parts of plaintiff's printed case and brief. 
 Because we do not consider those parts of plaintiff's filings in reaching
 our decision, the motion is denied as moot.

FN2. The court declined to reach defendants' other arguments that the
 trooper's actions were discretionary functions exempted from the Act and
 that the trooper had qualified immunity, and we need not address these
 arguments here.

FN3. Our case law is inconsistent on this point. Some decisions bypass
 consideration of the elements of the claim and proceed straight to
 consideration of private analog. Compare Sabia, 164 Vt. at 298, 669 A.2d
 at 1191 (stating that "Denis requires that we determine whether [a
 statutory duty of care] exists under the circumstances," and finding a duty
 to exist before reaching the private analog inquiry), with Noble v. Office
 of Child Support, 168 Vt. 349, 352, 721 A.2d 121, 123 (1998) (finding no
 private analog without determining the existence of a duty) and Lafond v.
 Dep't of Soc. & Rehab. Servs., 167 Vt. 407, 409-10, 708 A.2d 919, 920
 (1998) (finding no private analog without determining the existence of a
 duty). Much of the inconsistency may be explained as this Court's
 responding to the particular arguments raised. Regardless, no-duty rules
 and immunity rules are often two sides of the same coin. See 1 D. Dobbs,
 The Law of Torts § 226, at 576-77 (2001) ("The similarities between no-duty
 rules and immunity rules are so great that the two terms can often be used
 interchangeably . . . ."). The blurred line is illustrated by our analysis
 in Andrew v. State, where we concluded that the statutes concerning
 workplace safety inspections did not create any duty to employees of
 inspected workplaces and had no private analog. 165 Vt. 252, 256-60, 682
 A.2d 1387, 1390-92 (1996).

FN4. Plaintiff argues for application of Vermont's good samaritan statute. 
 That statute alters the common law duty by requiring that "[a] person who
 knows that another is exposed to grave physical harm shall . . . give
 reasonable assistance to the exposed person." 12 V.S.A. § 519. The
 statute is not applicable in this case because the facts alleged do not
 support a finding that trooper knew that plaintiff was exposed to grave
 physical harm. Furthermore, the statute "does not create a duty to
 intervene in a fight." State v. Joyce, 139 Vt. 638, 641, 433 A.2d 271, 273
 (1981).

FN5. "Gross negligence" and "willful misconduct" are excepted from the
 general rule that causes of action for acts of State employees must be
 brought against the State and not the individual. 12 V.S.A. § 5602(b).