# STATE OF VERMONT

SUPERIOR COURT
Washington Unit

CIVIL DIVISION
Docket No. 223-6-20 Wncv

2020 NOV 12 P 2:08

FILED

Patrick Palmieri,
Salvatore Palmieri,
Angela Medugno,
Vincent Palmieri,
Steven Palmieri,
Nancy Giglio,
Gerald Palmieri,
Elizabeth Palmieri,
    Plaintiffs

v.

State of Vermont,
Timothy S. Page,
    Defendants

DECISION ON MOTION

Plaintiffs are the siblings and children of Mr. Vincent Palmieri, who, they allege, disappeared from his New York home in 1972 and was found dead in Vermont a month later. At the time, the Vermont State Police were unable to identify him, and the case went "cold." At some point between 2007 and 2017, Mr. Palmieri was identified. In 2017, the Vermont State Police delivered the news to Plaintiffs, who had never known what had happened to Mr. Palmieri. Plaintiffs claim that the Vermont State Police and Defendant Detective Sargeant Timothy S. Page, who performed relevant cold case work, should have notified them of his death in 2007, approximately 10 years earlier than they actually received notice. They claim that the delay was the result of negligence (count 1) and supports an award of relief in equity and/or pursuant to Vt. Const. ch. I, art. 4 (remedy at law secured to all) (count 2). They further claim that Mr. Page's conduct was grossly negligent (count 3).

The State and Mr. Page have filed a motion to dismiss, arguing that: (a) the negligence claims fail for lack of any enforceable legal duty; (b) all claims are barred by the discretionary function exception to the Tort Claims Act; (c) the negligence claim against Mr. Page in his individual capacity could only have been brought against the State; (d) the allegations are insufficient to describe gross negligence; (e) Mr. Page, in his individual capacity, is entitled to qualified immunity; and (f) there is no cognizable right to relief in equity or under Vt. Const. ch. I, art. 4.[1] Plaintiffs oppose dismissal and request an evidentiary hearing at which they may require Mr. Page to testify, purportedly to establish some dispute of fact.

The Vermont Supreme Court has described the familiar standard for Rule 12(b)(6) motions to dismiss for failure to state a claim as follows:

---

[1] The court will refer in this decision to the State and Mr. Page collectively as "the State" unless the context requires otherwise.

"A motion to dismiss . . . is not favored and rarely granted." This is especially true "when the asserted theory of liability is novel or extreme," as such cases "should be explored in the light of facts as developed by the evidence, and, generally, not dismissed before trial because of the mere novelty of the allegations." In reviewing a motion to dismiss, we consider whether, taking all of the nonmoving party's factual allegations as true, "'it appears beyond doubt' that there exist no facts or circumstances that would entitle the plaintiff to relief." We treat all reasonable inferences from the complaint as true, and we assume that the movant's contravening assertions are false.

*Alger v. Dep't of Labor & Indus.*, 2006 VT 115, ¶ 12, 181 Vt. 309, 316–17 (citations omitted). Plaintiffs' request to present evidence is denied. Plaintiffs' request for an evidentiary hearing to establish a dispute of fact has no place in Rule 12(b)(6) procedure.[2] Rule 12(b)(6) is predicated on the facts as alleged in the complaint and addresses legal issues only. Whether the alleged facts may later be disputed on the evidence is irrelevant at this stage of the proceedings.

Plaintiffs allege as follows. Mr. Palmieri died sometime before June 1, 1972, when his body was found in the Passumpsic River in Barnet, Vermont. He had been reported missing to the Staten Island, NY police by his wife on May 5, 1972 after going missing several days earlier. At the time his body was found, the Vermont state police were unable to identify him, and the investigation went "cold." The complaint does not say whether there ever was a determination as to how Mr. Palmieri died.

In July 2006, Detective Page was assigned to investigate the cold case. The complaint is confusing. Plaintiffs allege that Mr. Palmieri was identified either during or before 2007 or in 2016/2017. If the latter, they appear to allege that Mr. Palmieri should have been identified by 2007. Either way, they allege that Detective Page should have notified them of Mr. Palmieri's death in 2007 in the course of his cold case work. Detective Page and another detective did attempt to contact certain individuals sharing Mr. Palmieri's surname, but failed to follow up with them and never contacted Plaintiffs. Plaintiffs allege that Detective Page then simply abandoned his investigation unreasonably in 2007.

In 2016, Captain JP Sinclair took over the cold case. Shortly thereafter, in 2017, Captain Sinclair notified Mr. Palmieri's children of his death.

Plaintiffs allege that as far back as 2007, the Vermont State Police either had identified Mr. Palmieri or had sufficient evidence with which to identify him and should have done so and then promptly located and notified his next of kin. They nevertheless failed to do so until 2017. This, it is asserted, is because Detective Page was negligent (or grossly negligent) in conducting his cold case investigation. It is alleged that this negligence lengthened the time during which Plaintiffs remained uncertain as to his death and location and impeded their ability to restore his remains to the family's preferred location, unnecessarily prolonging their emotional

---

[2] To the extent that Plaintiffs may have been contemplating a conversion to summary judgment (which no one requested), where a determination as to whether the facts are disputed is critical, the court notes that Rule 56 procedure looks to evidence in the record and also does not envisage an evidentiary hearing to develop it.

suffering. Other than asserting that Detective Page abandoned his investigation, they do not more specifically describe any negligent acts.

Analysis

1.      Legal duty

Plaintiffs' claims for negligence against both the State and Mr. Page, individually, must be premised on a legal duty. The basic elements of a claim of negligence include "a legal duty owed by defendant to plaintiff, a breach of that duty, actual injury to the plaintiff, and a causal link between the breach and the injury." *Demag v. Better Power Equip., Inc.*, 2014 VT 78, ¶ 6, 197 Vt. 176. Plaintiffs do not identify any legal duty in the complaint and largely fail to in briefing as well. Rather, they assert a circularity: that by "undertaking" the cold case investigation, the police necessarily assumed a duty to perform the investigation in a non-negligent manner. The mere fact that one engages in an undertaking, however, does not demonstrate that the undertaking was compelled by any enforceable legal duty.

The Vermont Supreme Court has described the concept of a legal duty for negligence purposes as follows. "Whether or not one party owes a duty to another is an expression of policy considerations about when people are entitled to legal protection. Thus, whether a duty is owed is primarily a legal question in which the Legislature or courts 'apply general categorical rules' establishing or withholding liability." *LeClair v. LeClair*, 2017 VT 34, ¶ 10, 204 Vt. 422 (citation omitted) (quoting Restatement (Third) of Torts § 7 cmt. a and citing *Kuligoski v. Brattleboro Retreat*, 2016 VT 54A, ¶ 19, 203 Vt. 328 (superseded by statute on other grounds)); see also *Kane v. Lamothe*, 2007 VT 91, ¶ 7, 182 Vt. 241 (explaining that the evaluation of a negligence claim against the State should begin with an assessment of duty).

The court offers the following as a simple explanation of the concept of duty: one of the most commonly brought types of negligence claims is an automobile accident claim, where the plaintiff alleges that a defendant breached a duty to operate his or her car in a reasonably prudent and safe manner, causing an accident in which the plaintiff was injured. There, even though perhaps they had never met, the plaintiff and defendant shared a well-established relationship of corresponding duties, each to the other, as concurrent users of the public highway system, and that duty of care is well recognized in the law. See Dobbs, The Law of Torts § 251 (2d ed.). It is easy to grasp that if the defendant failed to note that the plaintiff was stopped at a red light, and rear-ended the plaintiff, that he would be responsible for the injuries he caused.

But not every instance of perceived unreasonable behavior gives rise to a negligence claim. Actionable negligence claims only may exist where an enforceable legal duty can be identified. In this case, because Plaintiffs failed to identify any legal duty in the complaint, the State appears in its motion to have inferred that the most likely applicable duty is the one that applies to the negligent performance of an undertaking for the benefit of a third person. The duty does not mean that anything one does for another, but does so unreasonably, subjects that person to liability. The duty is more particularly described as follows:

3

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

> (a) his failure to exercise reasonable care increases the risk of such harm, or
> (b) he has undertaken to perform a duty owed by the other to the third person, or
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A. Plaintiffs appear to assent to the State's characterization of their claim. Cf. *Kane v. Lamothe*, 2007 VT 91, ¶¶ 9–11, 182 Vt. 241 (explaining that Vermont statutes and the practices described in the Vermont State Police Manual do not establish a duty owed by the police any particular crime victim).

In the right circumstances, this duty applies where "one" (the State police) render services to "another" (Plaintiffs) necessary for the protection of a "third person" (Mr. Palmieri). This tort duty addresses harm to the third person, in this case Mr. Palmieri. The Vermont Supreme Court's decision in *Kennery v. State*, 2011 VT 21, 191 Vt. 44 is instructive. There, a concerned daughter requested that the police do a "welfare check" on her elderly mother at her elderly mother's home. The police responded but went to the wrong house. Not finding the mother there, the daughter was advised that she was not there. In fact, the mother was at her home, had fallen outdoors, was unable to get up, remained undiscovered after the police failed to find her, and later succumbed to hypothermia as a result. As the Vermont Supreme Court explained, these facts could support a § 324A claim if a jury were to determine that the negligent welfare check increased the risk of harm to the mother or caused harm to her due to reliance by the daughter. *Id.* ¶ 16.

Plaintiffs have not stated a claim under § 324A. Such a claim in this case would address harm to Mr. Palmieri, not to Plaintiffs, in the context of rendering services to Plaintiffs. There is no claim that anything the police did hastened or caused Mr. Palmieri's death, and they never had any contact with Plaintiffs prior to Mr. Palmieri's death. Nor is there any way to interpret the allegations to the effect that the police were rendering services to someone else and Plaintiffs are the injured third persons for § 324A purposes.

Rather, Plaintiffs are asserting that the police owed a duty directly to them, the family members of the decedent. In essence, they claim that the police had a duty to investigate Mr. Palmieri's death in such a manner as to identify him as soon as reasonably possible so as to notify his next of kin as soon as reasonably possible. However, the police generally have no enforceable duty to conduct investigations in any particular manner at all. *Baptie v. Bruno*, 2013 VT 117, ¶¶ 22–23, 195 Vt. 308. Their duty is owed to the public at large, not any individual in particular. *Kane v. Lamothe*, 2007 VT 91, ¶ 9, 182 Vt. 241. A duty to investigate in order to provide reasonable notification of a death to next of kin in circumstances where there is no duty to the crime victim or decedent certainly would be extraordinary. However, there is no common law "duty to notify the next-of-kin of a death." *Tinsley v. Dudley*, 915 S.W.2d 806, 807 (Tenn. Ct. App. 1995); see also *Guerra v. State*, 348 P.3d 423, 427 (Ariz. 2015) ("[O]fficers

4

do not owe a duty to a victim's family or friends by undertaking to investigate a crime or accident and identify victims. No principled distinction exists between the investigation and notification for purposes of imposing a duty.").

Plaintiffs negligence and gross negligence claims are unsupported by any apparent legal duty and must be dismissed.

2.    *Equity and Vt. Const. ch. I, art. 4*

Plaintiffs also claim, apparently in the alternative, that if they do not have a negligence claim, then the lack of a viable tort claim guarantees them a right to compensatory damages as an equitable matter, pursuant to Vt. Const. ch. I, art. 4 (remedy at law secured to all), or by some combination of both.

Equity does not guarantee Plaintiffs a remedy. It is true that "[e]quity will not afford relief where there is a plain, adequate, and complete remedy at law." *People's United Bank, NA v. Alana Provencale, Inc.*, 2018 VT 46, ¶ 17, 207 Vt. 362. But the converse does not mean that equity will afford relief where there is no enforceable legal right. "Equity generally has no jurisdiction over imperfect rights arising from moral rather than legal obligations; not every perceived injustice is actionable in equity—only those violating a recognized legal right." *Titchenal v. Dexter*, 166 Vt. 373, 377 (1997). Plaintiffs are improperly trying to use equity to manufacture a legal right that does not exist.

Article 4 also does not guarantee Plaintiffs a remedy. The provision at issue provides: "Every person within the state ought to find a certain remedy, by having recourse to the law, for all injuries or wrongs which one may receive in person, property or character; every person ought to obtain right and justice, freely, and without being obliged to purchase it; completely and without any denial; promptly and without delay; conformably to the laws." Vt. Const. ch. I, art. 4. Article 4 does not spring to life and provide a remedy when a legal right otherwise cannot be established. "Where a substantive right—e.g., a property interest—already exists, conferred by statute or common law, Article 4 can protect a plaintiff against deprivation of that right without due process." *Nelson v. Town of Johnsbury Selectboard*, 2015 VT 5, ¶ 44, 198 Vt. 277. Plaintiffs are improperly trying to use Article 4 to manufacture a legal right that does not exist.

Neither equity nor Article 4 gives Plaintiffs a viable claim in this case.

3.    Other bases for dismissal

Because the negligence and gross negligence claims must be dismissed for lack of any legal duty, and the equity and Article 4 claims must be dismissed simply for failing to describe a cognizable legal claim at all, it is unnecessary to address the several other arguments the State has asserted in support of dismissal.

5

# Order

For the foregoing reasons, the State's motion to dismiss is granted.

The State shall submit a form of judgment.  V.R.C.P. 58(d).



Robert R. Bent,
Judge