Vermont Superior Court
Filed 08/07/24
Lamoille Unit

VERMONT SUPERIOR COURT

Lamoille Unit
154 Main Street
Hyde Park VT  05655
802-888-3887
www.vermontjudiciary.org



CIVIL DIVISION

Case No. 24-SC-00693

---

**Jennifer Ruest v. Melinda Dickson**

---

## SMALL CLAIMS JUDGMENT

A Small Claims Complaint was filed on April 15, 2024.

On May 29, 2024 Defendant(s) filed an Answer with the Court.

Defendant ☐ did   ☒ did not file a counterclaim.

Trial by Court took place on 8/6/2024.

The Plaintiff:

☒ was present and appeared with counsel        ☒ was pro se

The Defendant:

☒ was present and appeared with counsel  ☒ was pro se

☒ Based upon the evidence presented and findings made as follows:

In November of 2023, Plaintiff Ruest needed a place to live and store her possessions following a fight with her partner.  She contacted Defendant Dickson who agreed to let Ruest, Ruest's son, and their pets live with Dickson and to store her items at Dickson's property.  At the time, Dickson did not ask Ruest for rent, and there was no rental agreement created.  Ruest was effectively invited to stay with Dickson as short-term guest.  Ruest was not given separate accommodation, but she, her son, and the pets were given spare rooms to use.  The parties never formalized their relationship into a written or oral agreement.  Instead, this appears to have been a favor that Dickson did to help Ruest out of a difficult position.

During the process of moving the items, neither Ruest nor Dickson took an inventory of the items being moved, and the two parties disagree on what items Ruest actually moved to Dickson's property or left at the property when she departed.

The good relationship that the parties initially enjoyed quickly soured.  By late January, Dickson informed Ruest that she needed to leave the property.  Ruest, her son, and their pets did move out, but Ruest left a large number of her possessions at Dickson's house in storage.  The evidence shows that for the next 60 days Ruest and Dickson attempted to arrange a time for Ruest to remove her items.  These efforts failed for a number of reasons including the fact that the relationship between the two women had degraded to the point where they were filing relief from abuse petitions against each other and refusing to be in the other's presence without either law enforcement or a third party to act as a buffer.

The evidence shows that Ruest continued her efforts into April of 2024, but by the end of March Dickson had started giving away Ruest's possessions including a king-sized bed, a couch, two dressers, an air fryer, a mini fridge, a hutch, and a kayak among other items.  Yet, Dickson also acknowledged that there were other items that she knew were important to Ruest that she did not attempt give away.  These included dog statutes and the cremated remains of one of Ruest's dogs and Ruest's son's medication.

In April 2024, Ruest filed the present action. This matter was set for an initial hearing on July 10, 2024. At that hearing, the parties made arrangements to exchange additional items. The Court recessed the hearing and allowed the parties to perform the exchange., which occurred successfully. The hearing reconvened on August 6, 2024.

As preliminary matter, there is a question about the nature of the relationship between the parties and the obligations between each. Dickson's initial position is that Ruest was a tenant and had abandoned her property, which allowed Dickson to dispose of the items under 9 V.S.A. § 4462. The problem with this position is that Ruest was never a tenant as that term is defined in 9 V.S.A. § 4451. There was never a rental agreement between the parties. There was no consideration exchanged, and Ruest never held a right possess even a portion of the premises. When Dickson revoked her invitation to stay, Ruest felt she had no other option than to simply leave.

Even if Ruest had been a tenant, there is no evidence that she abandoned the residence or her property. Dickson directed Ruest to leave on short notice. The evidence shows that despite leaving the property, Ruest sought to recover her property multiple times throughout January, February, March., and April of 2024. To graft the rules of a residential tenancy onto this situation is not supported by the parties' actions or the law of residential tenancy under 9 V.S.A. §§ 4451, et sec. Even if such laws were applicable, the evidence does not support a finding that Ruest abandoned her possessions. Therefore, the provisions of Section 4462 do not apply, and the Court finds that there was neither a tenancy, nor abandonment under 9 V.S.A. § 4462.

The parties' relationship is best understood as two different relationships. First, Dickson invited Ruest to stay with her as a guest. Ruest did for several months, but this relationship ended in January 2024 when Dickson told Ruest to leave, and Ruest left.

Second, Dickson agreed to store Ruest's personal possessions. While this occurred at the same time that Ruest moved onto the property, it was, in practice and effect, separate arrangement as it involved Ruest renting a truck and moving personal property into Dickson's garage and other parts of the house beyond the living space where it was held in storage throughout Ruest's occupancy in the house.

By extension, this relationship is legally best understood as a bailment relationship, where one party agrees to store and hold the possession of another. *Fifield v. Autobahn Body Works, Inc.*, 2105 WL 395301 (Dckt. No. 107-2-15 Cncv) (May 15, 2015) (Toor, J.). Under bailment law, damages resulting from either a failure or negligence by the person storing the items (known as a bailee) is measured by the amount of benefit each party derives from the bailment. *Kottlowski v. Bridgestone/Firestone, Inc.*, 670 N.E.2d 78, 82 (Ind. App. 1996). When a bailee takes in the goods of another without reward or benefit, the only liability they carry is for gross negligence. *Jobidon v. Lussier*, 124 Vt. 242, 247 (1964); see also 19 WILLISTON ON CONTRACTS § 53:8 (4th ed.).

Gross negligence is defined in Vermont as "heedless and palpable violation of legal duty respecting the rights of others." *Kane v. Lamothe*, 2007 VT 91, ¶ 12 (citing cases) (internal quotations omitted). It is "the failure to exercise even a slight degree of care owed to another." Id. (internal quotations omitted). It is "more than an error of judgment." *Hardingham v. United Counseling Service of Bennington County, Inc.*, 164 Vt. 478, 481 (1995). Gross negligence is distinguishable from either negligence, which is a breach of a duty of care, or breach of contract, which the violation of an implied or express term of an agreement between two parties.

In this case, there was no formal agreement between the parties. Dickson agreed to hold Ruest's possessions. She did so without compensation or representation of the quality or care offered. There is evidence showing that Ruest knew she was storing her items in a cold garage with only limited protection from the elements. There was no discussion about the length of storage, or any other term that might govern the relationship. Yet, it is inarguable that Dickson did agree to store Ruest's possessions, that Ruest relied on this offer, and that the parties acted upon this resulting agreement to have Dickson store Ruest's possessions.

When the parties' personal relationship soured, they attempted to move Ruest's possessions. While Ruest made requests to move her things as early as January 25, 2024, most of the parties' effort occurred in March 2024. When

those first attempts failed, Dickson unilaterally decided to start giving Ruest's possessions away for a variety of minor reasons.[1] The Court finds that Dickson's actions were unreasonable and lacked even a slight degree of care toward Ruest. As such, the Court finds that Dickson's actions to dispose of Ruest's possessions were gross negligence, and they give rise to liability.

Before the Court can apply this standard, however, it must review the items that Ruests claims were left at her house. These fall into several categories.[2]

The first category of items are those items that Ruest and Dickson agree were stored at Dickson's house and that Dickson admits to having given away to third parties. These include 1) a king-sized bed ($1,800); 2) a couch ($1,500); 3) two dressers ($2000); 4) two end tables ($1000); 5) a mini fridge ($400); 6) bathroom hutch ($300); 7) air fryer ($650); 8) corner hutch ($200); 9) small glass table and chairs ($200); and 10) a kayak ($500). The values attached to each item are the purchase prices that Ruest cited in testimony and provided some evidence through invoices. The Court finds that while some of these items were relatively new, the valuations do not reflect the actual cash value of the lost items, which is the value of the item minus depreciation. *Parker's Classic Auto Works, Ltd. v. Nationwide Mutual Ins. Co.*, 2019 VT 46, ¶ 15. In this case, the Court finds that the value of the furniture should be reduced by 40% to reflect its age, use, and storage in a garage. With this reduction applied, the Court finds that the total amount of damages for this category to be $5,130.00 and that this amount is an accurate estimate of the value of the items that were stored at Dickson's and given away by her to third parties.

The second category are items that belong to Ruest's son, and which were given to his father. These include the toys, sled, and medication. Dickson acted in a reasonable manner in giving these items to the father when initial efforts to return the items to Ruest failed, and no liability attaches.

The third category are items that Ruest did not own and has no claim to assert. This includes the picnic table, the neighbor's bike, and the outdoor plants and set-up. The Court finds no basis to award damages for these items.

The fourth category are items that were not part of the storage and cannot be included in this claim. This includes the ski pass; dog food; and food. The Court finds no basis to award any damages associated with these items.

The fifth category are items that were broken in either storage or moving process. This is primarily the glassware. The Court finds no evidence of gross negligence. No damages are awarded for this category.

The sixth category are items that Dickson disputes were stored at her house or that she failed to return. They include the dog toys, the diamond ring, bedding and chair, the vacuums, shoes and snowboarding boots, rugs, and plastic bins. Given that the parties neve made an inventory, and there is no independent evidence of these items, the Court finds insufficient evidence to establish that the items were either stored or lost at Dickson's house, and by extension, the Court declines to find liability for these claims as Plaintiff has not carried her burden to establish that these items were in Dickson's sole care and control, and that Dickson gave them away or lost them through gross negligence.

Based on these findings, the Court awards Plaintiff **$5,130.00** for the items that the evidence shows were under the exclusive care and control of Dickson and that Dickson gave away to third parties, despite the knowledge that Plaintiff was actively trying to recover these items through mediated efforts to arrange acceptable moving times and dates. For these items, Ruest has established her claim of gross negligence.

---

[1] For example, Dickson testified that she gave Ruest's kayak away because it was killing her grass. Given that she gave away the kayak away in late March, this reason does not appear to be valid. Grass in March in Vermont is still dormant and is "dead" in appearance whether it is beneath a kayak, a snowbank, or open to the sun. This Court finds that reason was a pretext, and it shows that in reality Dickson was simply tired of dealing with Ruest and Ruest's stuff and was just moving to get rid of the larger items that were frustrating her.

[2] The Court is excluding any items that Dickson has returned to Ruest either prior to or during the course of this litigation.

Finally, Dickson seeks to offset the damage claims against her by introducing damages that she claims Ruest's dogs caused to her furniture. These offsets are denied for three reasons. First, the Court is not persuaded that the parties reduced this understanding to an actual agreement. Second, this was a damage that Dickson reasonably should have foreseen by allowing dogs into her house, and Disckson assumed the risk of such damages occurring. Third, the Court credits Ruest's testimony that she always kept her dogs under her control when she was home, and that the dogs were locked in crates when she was not. Ruest credibly noted that any damage attributable to the dogs would necessarily have to arise from another resident allowing the dogs out of their crates while Ruest was not present. This would absolve Ruest from liability as any damage arose from a third-party's intervention. For these reasons, the Court declines to award any offset for the chew marks on Dickson's furniture.

IT IS ORDERED AND ADJUDGED that judgment is entered for the ☒ Plaintiff ☐ Defendant.

The Plaintiff Jennifer Ruest shall have judgment against Defendant Melinda Dickson in the amount of:

| | |
|---|---|
| **$5,130.00** | in damages |
| **$0.00** | in interest |
| **$172.34** | in costs |
| $5,302.34 | Total |

Interest will accrue at the rate of 12% per year on any unpaid amounts.
Electronically signed on 8/6/2024 8:25 PM pursuant to V.R.E.F. 9(d)

_____
Daniel Richardson
Superior Court Judge

VERMONT SUPERIOR COURT
Lamoille Unit
154 Main Street
Hyde Park VT  05655
802-888-3887
www.vermontjudiciary.org

CIVIL DIVISION
Case No. 24-SC-00693



| Jennifer Ruest v. Melinda Dickson |
|---|

# NOTICE OF RIGHT TO APPEAL

Either party may appeal this judgment by filing a Notice of Appeal with the Clerk of the Court.  A fee is due within thirty (30) days of the date of judgment.

### YOU MUST TELL THE COURT WHEN THE JUDGMENT IS PAID

The party collecting the judgment must notify the court clerk and the other party(ies) within 21 days after the judgment is paid in full so that satisfaction of judgment can be entered on the docket.  If notification is not received within that time, the other party(ies) may file a motion for an order that judgment be deemed satisfied.

### ACCEPTANCE OF SERVICE

I accept service of this Order.

_____       _____
Date                                                          Signature